# Richmond

## FIRST STATE BANK OF MONROE V. CHARLES CONNOLEY.

### November 17, 1921.

1. BAILMENTS—*Liability of Gratuitous Bailee—Disobedience of Instructions—Case at Bar.*—Plaintiff's bank at Monroe asked defendant to take a draft to the First National bank of Lynchburg and bring back the money. But when defendant informed the bank that he would not be back until in the night, the bank asked him to take it to one H, and ask H to send the draft by some responsible person. Defendant took the draft to H, who asked him to give it to one M to take to Lynchburg. Defendant took the draft to M, but found that he was not going to Lynchburg. Thereupon defendant took the draft on to Lynchburg, got the money and lost it. The evidence was express that the bank gave defendant no authority whatever to himself take the draft to Lynchburg after defendant stated that he did not expect to come back until in the night.

   *Held:* That defendant was liable to plaintiff for the lost money.

2. BAILMENTS—*Liability of Gratuitous Bailee.—General Rule.*—A gratuitious bailee can be held liable for gross negligence only.

3. BAILMENTS—*Liability of Gratuitous Bailee—Disobedience of Instructions*—If a gratuitous bailee undertakes to deal with the subject of the bailment in a manner not warranted by his instructions, expressed or implied, and the property is lost, he is liable therefore, irrespective of any want of due care on his part, unless his act is ratified by the bailor with full knowledge of the circumstances.

4. BAILMENTS—*Liability of Bailee—Unauthorized Use of Subject—Gratuitous Bailee—Bailee for Hire.*—Except as to the degree of diligence and care required of him, the general obligation of a gratuitous bailee is the same as if he had assumed the trust upon the promise or with the expectation of reward, and, if a bailee for hire makes an unauthorized use of the subject of the bailment, he is liable for any resulting loss or damage irrespective of whether he is or is not negligent.

5. APPEAL AND ERROR—*Judgment by Appellate Court.*—Where the facts of the case are fully before the Supreme Court of Ap-

peals and are uncontroverted, the Supreme Court of Appeals will enter judgment accordingly.

Error to a judgment of the Circuit Court of Amherst county in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

This is an action of trespass on the case in assumpsit brought by the plaintiff in error bank, as plaintiff in the court below, against the defendant in error Connoley, as defendant in the court below, to recover the sum of $1,000.-00, the amount of a draft belonging to the bank entrusted to and received by Connoley under certain instructions which did not authorize him to cash the draft, but which Connoley, in excess or in disregard of his instructions and authority, took to the bank on which it was drawn, cashed into money, and subsequently lost the money out of his pocket, the result being the loss to the bank of the amount of the draft which is sued for.

There was a trial by jury and a verdict and judgment accordingly in favor of the defendant.

There is no conflict in the evidence as to the material facts in the case, and they are as follows:

The defendant, Connoley, happened to be in the plaintiff's bank at Monroe on a certain day and was asked to take a draft in an envelope to the First National Bank of Lynchburg, in Lynchburg, which was about seven miles from Monroe, and bring back the money which was called for by the draft, being the sum of $1,000.00. Connoley informed the bank that he did not expect to come back until in the night. He then started to leave the bank and was called back and asked to take the draft to a Mr. Hicks at Monroe and to tell Mr. Hicks to send the draft by some responsible person. The evidence however is express that

the bank gave Connoley no authority whatever to himself take the draft to Lynchburg after Connoley stated that he did not expect to come back until in the night. Connoley took the envelope with the draft in it to Mr. Hicks, who said he was busy and asked Connoley why Connoley didn't take it. Connoley replied that he was not coming back till in the night. Hicks then told Connoley to take the draft over to the depot and give it to a Mr. McIvor to take to Lynchburg. Connoley took the draft to McIvor but found that McIvor was not going to Lynchburg. Thereupon Connoley took the draft on to Lynchburg himself, went to the bank, got the money, done up in a package, and put it in his inside coat pocket. It was about 2 P. M. when Connoley cashed the draft. He had nothing in particular to. do that afternoon, so he bought a pint of whiskey in Lynchburg, (just where or from whom he declined to tell), went to a picture show and other public places mentioned in his testimony, and left Lynchburg for Monroe that night about 10 o'clock, in a jitney, with four others. As he got in the jitney Connoley felt in his pocket and was confident he had the money at that time. Connoley was on the back seat of the automobile coming back to Monroe, with two of the other passengers on that seat. When they got to a watering trough, just outside of Lynchburg, the engine began to heat and Connoley got out and put some water in the radiator. He did not miss the money until he got in his room at Monroe. He then went out and told a person, who was a witness in the case, that he had lost the money, got this person to take him back to the watering trough, where they both looked for but could not find the money. They afterwards looked in the jitney for the money but failed to find it there. The next morning Connoley went to the bank and told the cashier that he had lost the money. The pint bottle of whiskey was only half full when one of the witnesses saw it when the stop was made to put water in the radiator as aforesaid. Connoley had been drinking while

31

in Lynchburg and on his return to Monroe, but, as several witnesses testified, was at no time drunk. The money was never found. Connoley was not promised any compensation for his services in connection with the matter and received none, his action being wholly gratuitous and for the sole benefit of the bank.

The instructions given by the court assumed that the defendant, Connoley, had the implied authority to take the draft to Lynchburg, etc., and were to the effect that if the jury believed that the defendant was a gratuitous bailee for the sole benefit of the bank, the law required of him only a slight degree of care, and made him answerable only for gross negligence.

And the court refused to give the following instruction asked for by the plaintiff, namely:

"(2) The court instructs the jury that if you believe from the evidence that the defendant had no authority from the plaintiff's cashier to take the draft in question to Lynchburg and collect same himself, and that he did so in violation of his instructions, and thereby exceeded or disregarded his instructions given him at the time he received said draft, and that by reason of his exceeding or disregarding his instructions plaintiff's money became lost, the defendant is liable in the action, irrespective of any question of negligence on his part."

The action of the court in refusing to give the last named instruction is one of the assignments of error.

*B. B. Campbell,* for the plaintiff in error.

*Whitehead & Shrader,* for the defendant in error.

SIMS, J., after making the foregoing statement delivered the following opinion of the court.

[1] In the view we take of the case, the sole question presented by the assignments of error which we need to decide is the following:

1. Is the defendant, Connoley, liable to the plaintiff bank for the money which was lost by him while he was acting in disregard of his instructions from the bank in accordance with which he accepted the undertaking confided to him.

This question must be answered in the affirmative.

[2] The defendant, Connoley, was undoubtedly in the inception of the transaction which was the basis of this action, a gratuitous bailee or mandatory, acting for the sole benefit of the bank, the bailor; and if the defendant had not exceeded or disregarded his instructions the law of the case would have been in accordance with the instructions which were given by the trial court. For all of the authorities lay it down that a gratuitous bailee can be held liable for gross negligence only. 5 Cyc. 186; *Carrington* v. *Ficklen's Ex'rs,* 73 Va. (32 Gratt.) 677, and numerous other Virginia cases and other authorities. What is gross negligence in a given case is a matter not always easy to determine, as it will depend upon all the circumstances of the particular case. However, that question does not arise in the case before us, for the reason that the uncontroverted evidence plainly shows that the defendant disregarded and exceeded his instructions in accordance with which he had accepted the undertaking confided to him, when he took the draft to Lynchburg and cashed it. When he took that action he did so outside of the authority conferred upon him as bailee. That authority extended no further than his taking the draft in the first instance to Hicks, and subsequently, under Hicks' direction, to McIvor. He had no authority from any one to take the draft any further. He should have left the draft with McIvor or have brought it back to and have left it with Hicks, according to his instructions from the bank. When he went further, and took the draft on to Lynchburg,

he assumed an authority which had not been conferred upon him, and, in truth, acted, in so doing, not as bailee, but as a wrongdoer, and became personally responsible to the owner for the loss occasioned by such conduct, irrespective of any want of due care on his part. See note to 4 Am. Law Rep. p. 1225 *et seq.* and authorities cited.

[3] As said in the note, *supra* (4 Am. Law Rep. p. 1225) : "If a gratuitous bailee undertakes to deal with the subject of the bailment in a manner not warranted by his instructions, expressed or implied, * * and the property is lost, he is liable therefor, irrespective of any want of due care on his part, unless his act is ratified by the bailor with full knowledge of the circumstances." Citing a number of authorities, among which is a supreme court decision, in the case of *Walker* v. *Smith,* 4 Dall. 389, 1 L. Ed. 878-9. In that case the defendant was a gratuitous bailee of certain goods, which the plaintiffs by letter requested him to hold at the disposal of one B, but not to deliver them to B without being paid for the amount of the goods, or having such security given therefor as was satisfactory to the defendant, bailee. The defendant received the goods, but delivered them to B without receiving payment or exacting any security. Held: The defendant was liable for the value of the goods.

[4] As said of a bailee, who receives a deposit gratuitously, in *Jenkins* v. *Bacon,* 111 Mass. 373, 15 Am. Rep. 33: "Except as to the degree of diligence and care required of him, his general obligation is the same as if he had assumed the trust upon the promise or with the expectation of reward." Citing numerous authorities.

So too, if a bailee for hire makes an unauthorized use of the subject of the bailment, he is liable for any resulting loss or damage irrespective of whether he is or is not negligent. *Spencer* v. *Pilcher,* 35 Va. (8 Leigh) 565; *Harvey* v. *Epps,* 53 Va. (12 Gratt.) 153.

The uncontroverted evidence in the case before us is express that the bank gave the defendant no authority to

take the draft to Lynchburg after his statement that he would not return until in the night; nor was there any evidence whatsoever before the jury to support a finding that the defendant had the implied authority to do so.

[5] We feel constrained, therefore, to set aside the verdict and judgment under review, because of the refusal of the trial court to give instruction No. 2, quoted above, asked for by the plaintiff; and, as the facts of the case seem to be fully before us and are uncontroverted, and are such that we feel compelled to say that the plaintiff is entitled to final judgment against the defendant for the sum of $1,000.00, the amount sued for, we will enter judgment accordingly for that sum, with interest from the date of the entry of the order, and for the costs of the plaintiff in this court and in the court below.

*Reversed and final judgment entered.*