# Staunton.

## CORBIN D. GLASS v. O. W. HUDDLESTON.

September 12, 1930.

Absent, Holt, Hudgins and Gregory, JJ.

*Hall & Buford,* for the plaintiff in error.

*Willis & Hunter,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

In this case there was a notice of motion for judgment by Huddleston, plaintiff, in the trial court, against Glass, defendant, claiming $10,000.00 damages.

The negligence charged was that the defendant failed to drive and manage his automobile with proper care and precaution for the safety of the plaintiff, and recklessly and negligently drove his automobile at an unreasonable and improper rate of speed and at a curve in the highway he carelessly, recklessly and negligently ran his said automobile off of the main portion of the highway into a hole on the easterly side of said highway with great force and violence, by reason of which acts the plaintiff was thrown to the top of the automobile and stunned and injured, etc.

The facts briefly stated are these: On the afternoon of March 31, 1929, the plaintiff called the defendant over the phone, the defendant being then at his home in Roanoke city, and requested him to come to the hotel and drive himself and dinner guest, Miss Finney, to the latter's home at a place called Starkey, about three miles out of the city. The defendant and his wife drove in the defendant's comparatively new Hupp car to the hotel (Patrick Henry) and there the party decided to pay a call on a friend who lived on the Catawba road, before proceeding to Starkey. Enroute to this place the plaintiff and Miss Finney occu-

pied the rear seat of the car and the defendant and his wife the front seat; returning later they stopped at the hotel for a moment and then drove to Starkey, taking Miss Finney to her home, and then the three remaining occupants started for Roanoke, the seats being occupied as before except for the absence of Miss Finney. The defendant was driving, and his car being new, his rate of speed was not in excess of thirty-two miles per hour. About one-half of a mile out of Starkey toward Roanoke there was a curve in the road of about twenty-eight degrees and there was a crown in the road which reached its peak in the middle of the macadam which was also the middle of the road. The right of way was thirty feet wide and the average width of the macadam was sixteen and one-half feet. At a place about this curve the main road to Roanoke was intersected by a double pronged lateral road and between these prongs was a pine thicket. On the prong first reached by the defendant going to Roanoke some rock, presumably ground rock, had been placed. On the east, or defendant's side, of the main road was a drain of about one and one-half inches depression and there was an embankment of earth about three feet high on the outer right of way on which a telephone pole was placed in the embankment about one and one-half feet from its base. East of this telephone pole and off the right of way of the main road was a hole about one and one-half feet deep and two feet in diameter, over the top of which there was some debris in the form of litter composed of dead weeds, etc., which obscured the hole from one's vision. As the defendant approached this curve and the first prong of the intersecting road he turned off the main road, drove over the slight depression and the right wheels of his car passed over the hole, off of the right of way, causing what was termed a "terrific lurch," and went over the embankment barely missing the telephone pole, at which time he turned his car and came back upon the macadam road. The

distance which he traveled between the point of leaving the main road and the point of again reaching it was eighty feet. The lurch of the car as it passed over the hole thrust the plaintiff to the top of the car, from which he fell unconscious, sustaining injuries to his back, and for treatment he had to be taken to a hospital where he remained until the early fall and from which he was still suffering.

The only eye witness to the happening, who testified for the plaintiff, was Huddleston, himself. He described the thing somewhat as has been related, saying that he could not say that the defendant was driving recklessly or at an excessive rate of speed, or that he noticed anything about his driving that caused him (plaintiff) apprehension. He said that he did not know anything about such matters—was not an authority upon them. He testified, in answer to an appropriate question, as follows: "When we came to this curve the car seemed to dash off of the road suddenly and give one or two jerks or jumps and a telephone pole loomed up and I thought we were going to hit the telephone pole, it seemed as if we were going to hit it in the center, and instinctively I threw up my hands and about the time there was a terrible lurch and evidently the car hit the hole and it threw me up to the top of the car, it stunned me and when I came to the car was stopped."

We should here say that the accident occurred at 12:45 on the morning of April 1st and when the car left the road the defendant's wife was conversing from the front seat with the plaintiff on the back seat.

The evidence of the plaintiff, in addition to his own testimony, was that of two surveyors, one of whom made a diagram of the place of accident showing the roads, the objects as above related, measurements, distances, etc., and Miss Finney, who testified as to the appearance of the place on the next day and that there was some broken glass scattered around (the glass of the two rear doors had been broken at the time of the lurch), and two doctors who

testified as to the extent of the plaintiff's injuries, expense of treatment, etc.

When the plaintiff closed his case in chief the defendant, moved the court to strike out the plaintiff's evidence on the ground that the acts of negligence charged in the notice of motion had not been proved. At the conclusion of all the evidence this motion was renewed. The court overruled both motions, to which rulings exceptions were taken and this constitutes the basis of the first and chief assignment of error.

The jury rendered its verdict for the plaintiff, assessing his damages at $3,000.00, with costs. Defendant made the usual motion to set aside the verdict as contrary to the law and the evidence, which was overruled, and exception was taken.

We are asked to say that the ruling of the trial court was error and that at each stage of the trial when the above motions were made the court should have taken the case from the jury and held that there was no evidence of negligence on the part of the defendant. This we cannot do.

The evidence of both litigants showed that the defendant drove off of the macadam road, and indeed off of the right of way, when it was perfectly open and free of traffic; that the macadam was sixteen and one-half feet wide and the right of way thirty feet wide, and this was past midnight when one's powers of observation cannot be as effective as in the day; that he ran over a slight depression, then into the hole and then over an embankment three feet high and missed striking a telephone pole by inches. The defendant's explanation was that the ground over which he was to pass appeared level and there was apparently no reason why he should not pursue the course which he did; that the tilting of his car caused by the crown in the macadam made him instinctively draw out farther to the right but in reality he had never been able

to figure how he got off of the edge of the road except that he was confused on account of the intersecting road leading straight up in the woods and he thought he was going up there.

In Cyclopedia of Automobile Law, Blashfield, volume 2, page 1751, it is said: "Negligence is not an *ex cathedra* pronouncement, with which an act may be arbitrarily branded in the abstract, as the judicial eye may conceive it. There is no yardstick by which it may be determined whether any given action amounts to ordinary care. When the nature and attributes of the act relied upon to show negligence, constituting a proximate cause of the injury complained of, can only be determined by considering all the attending and surrounding circumstances of the transaction in question, it falls within the province of the jury to pass upon the character of such circumstances, and it is not for the court to determine the quality of such an act as a matter of law.

██ "In the vast majority of automobile accident cases, the question of whether the conduct of one charged with responsibility for the accident amounts to negligence is one calling for the exercise of human judgment, upon which men are very likely to differ, and where the evidence is conflicting, or reasonable men can draw different conclusions therefrom, it is for the jury to decide questions of negligence so arising    *    *    *."

Surely reasonable men could draw different conclusions as to whether the conduct of the defendant constituted negligence under the circumstances of this case.

██ This court has repeatedly held that whether particular facts constitute negligence is a question for the determination of the jury under proper instructions and there is no need to cite the cases.

The question of joint enterprise is not before this court, the defendant having abandoned his assignments of error in which that doctrine was involved.

We find no error in the court's rulings as to the instructions and the judgment of the trial court is affirmed.

*Affirmed.*

Epes, J., dissenting.

I am of opinion that the judgment in this case should be reversed, because the evidence, even when judged as upon a demurrer to the evidence, is insufficient to prove that there was any act of actionable negligence committed by the defendant. As the majority of the court concurs in the opinion of Mr. Justice Browning, it is profitless to enter upon a discussion of the evidence, the facts proved thereby and the inferences which may be fairly drawn therefrom.