# Staunton

## F. H. Boggs v. J. S. Plybon.

September 17, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*A. L. Hughson* and *Horace M. Fox*, for the plaintiff in error.

*Willis & Hunter*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

On the afternoon of November 13, 1929, J. S. Plybon, of Roanoke, had occasion to visit the village of Buchanan. He was accompanied by Mr. F. H. Boggs, a friend and an invited guest. The trip was made in Plybon's automobile, driven by himself. On their way back, about 6:45 P. M. and soon after they had passed the village of Troutville, this car left the roadway, struck a telephone pole and a fence, severely injuring the plaintiff, who afterwards filed a notice of motion for judgment. It was heard in due course. After the evidence had been introduced the defendant demurred thereto. There was a verdict in the sum of $7,500.00, subject to this demurrer. The trial court was of

opinion that it should be sustained, so ordered, and entered judgment for the defendant, which judgment now comes before us on a writ of error.

It had been raining on the day of the accident and there was some mist and fog at the time it occurred. The roadway itself was of macadam construction with a hard surface eighteen or nineteen feet wide. On its right-hand side going to Roanoke was a dirt shoulder something like four feet wide whose extreme west edge sloped down at an angle of repose to the earth's surface as it originally was, about eight feet below the fill on which the road was built. At the point of the accident this road ran on a curve to the left whose radius was 900 feet and was slightly down grade. The car in question was properly on its right-hand side, but, as it afterwards developed, was too near the edge of the macadam over which it ran. When its right wheel struck the soft wet earth of the shoulder the defendant attempted to cut back on the road, but due, in all human probability, to surface conditions, he was unable to do this, lost control and suffered the accident which is the subject of inquiry here.

As we have seen, the judgment in this case is one which sustains the demurrer and sets aside the verdict of the jury. Like all judgments it is presumed to be right until error is shown. If there was evidence in the record upon which the jury might with propriety have found for the plaintiff, then that evidence is sufficient to establish error. But if there was no evidence on which fairminded men could have found for the plaintiff, then in that case the court acted properly in sustaining the demurrer and in entering judgment for the defendant. As will hereafter appear, we have reached the conclusion that the evidence was wholly insufficient to sustain a recovery.

It is always necessary for the plaintiff to prove his

case. The mere happening of an accident is not sufficient basis for a verdict, or for a judgment, on a demurrer to the evidence or otherwise.

It is true that in some circumstances when positive evidence is wanting, evidential presumptions may be invoked to sustain a claim. In other words, the doctrine of *res ipsa loquitur* is sometimes applied, but its proper application rests always in the nature and quality of the accident. *Roanoke Ry. Co. v. Sterrett*, 108 Va. 533, 62 S. E. 385, 128 Am. St. Rep. 971, 19 L. R. A. (N. S.) 316.

"The rule itself is one of evidence and amounts to a *prima facie* presumption of fact sometimes resorted to by the court in the absence of evidence. It is a rule of necessity, to be invoked only when necessary evidence is absent and not readily available. On the other hand, it is not to be invoked when the evidence is in fact available and, *a fortiori*, not when it is actually presented. In such circumstances the case goes to the jury unhampered by any presumption at all." *Riggsby v. Tritton*, 143 Va. 903, 129 S. E. 493, 496, 45 A. L. R. 280.

Professor Wigmore, in discussing this presumption, said:

"It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him, but inaccessible to the injured person." Wigmore on Evidence, section 2509.

The steering gear was not out of order or if it was the defendant did not know it, and cannot be charged with knowledge. A guest takes a car as he finds it and the owner is not liable for damage from defects unless they are known to him and not patent to the passenger. *Mitchell v. Raymond*, 181 Wis. 591, 195 N. W. 855; *Marple v. Haddad*, 103 W. Va. 508, 138 S. E. 113, 61 A. L. R. 1248.

It is manifest that the accident was due to the fact that Plybon, on a dark night, drove too near the edge of the macadam and on to the wet soft shoulder of the road.

Where the facts appear in evidence there is no occasion to resort to evidential presumptions. Such an expedient is one of necessity, to be applied only when the facts are not known or when they lie peculiarly within the breast of the defendant. Plybon knew nothing that Boggs did not know.

█ The doctrine of *res ipsa loquitur* has no application. If the plaintiff can recover at all it is because the defendant has neglected to perform some duty due to him as an invited guest. Courts are not in accord as to its measure in such circumstances. Nowhere has this subject received more painstaking consideration than in *Massaletti* v. *Fitzroy*, 228 Mass. 487, 118 N. E. 168, 176, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088.

The Massachusetts court in an able opinion reached the conclusion that there should be no recovery except where negligence was gross, and in the course of its opinion, said:

"It would seem that in England the liability of a gratuitous bailee and the liability of one who undertakes a gratuitous transportation is the same. And to this one thing more must be added; namely, however much the English judges have quarreled with the meaning of the words 'gross negligence,' it is the fact that when pushed to a decision the judges of England have invariably held that to make out liability in case of a gratuitous undertaking (no matter what the nature of the gratuitous undertaking was) gross negligence has to be made out. *Giblin* v. *McMullen*, L. R. 2 P. C. 317, 5 Moore, P. C. 434, 16 Eng. Reprint, 578, 38 L. J. P. C. N. S. 25, 21 L. T. N. S. 216, 17 Week. Rep. 445; *Moffatt* v. *Bateman*, L. R. 3 P. C. 115, 22 L. T. N. S. 140, 6 Moore, P. C. C. N. S. 369, 16 Eng. Reprint, 765; *Coughlin* v. *Gillison* (1899) 1 Q. B. 145, 68 L. J. Q. B. N. S. 147, 47 Week. Rep. 113, 79 L. T. N. S. 627."

This conclusion has been reaffirmed in *Shriear* v. *Feigelson*, 248 Mass. 432, 143 N. E. 307; and in *Marcinowski* v. *Sanders*, 252 Mass. 65, 147 N. E. 275. See also *Epps* v. *Parrish*, 26 Ga. App. 399, 106 S. E. 297, and *Silver* v. *Silver*, 280 U. S. 117, 50 S. Ct. 57.

Other courts have refused to adopt the "gross negligence" rule and hold that ordinary care is the yardstick to be applied. *Dickerson* v. *Connecticut Co.*, 98 Conn. 87, 118 Atl. 518. This also is a leading case as is that of *Avery* v. *Thompson*, 117 Me. 120, 128, 103 Atl. 4, 7, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122, where the court said: "In other words, we conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound and workable rule, one consistent with established legal principles and just to both parties. It leaves the determination of the issue to the jury as a question of fact."

In a general way the rule last stated was adopted by the Special Court of Appeals, in *Morris* v. *Peyton*, 148 Va. 812, 139 S. E. 500, but it is to be borne in mind that the court was there dealing with an infant of tender years, who, at the time of the accident, was standing upon the running board or fender of a truck. The duty to an infant rather than the duty to a guest controlled that decision.

Most courts have abandoned the division of negligence into classes, as too vague to be of value. *Virginia, etc., R. Co.* v. *Sayers*, 26 Gratt. (67 Va.) 328.

"Nevertheless, this broad and simple classification is, with us, still regarded as useful and convenient in two or more classes of cases. The terms 'utmost care' and 'slightest negligence,' 'slight care' and 'gross negligence,' are still applied, especially in two classes of cases," namely, those dealing with common carriers of passengers and those in

which the rights of voluntary licensees and trespassers are in issue. *Poling* v. *Ohio R. R. Co.*, 38 W. Va. 645, 18 S. E. 782, 787, 24 L. R. A. 215.

In *New York C. Railroad Co.* v. *Lockwood*, 17 Wall. 357, 382, 21 L. Ed. 627, the court dealt with injuries suffered by one riding on a "drover's pass," and in the course of its opinion, said:

"We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence. Strictly speaking, these expressions are indicative rather of the degree of care and diligence which is due from a party and which he fails to perform, than of the amount of inattention, carelessness, or stupidity which he exhibits. If very little care is due from him, and he fails to bestow that little, it is called gross negligence. If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care is due, such as a prudent man would exercise in his own affairs, failure to bestow that amount of care is called ordinary negligence. In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate perhaps to call it simply 'negligence.' And this seems to be the tendency of modern authorities. If they mean more than this, and seek to abolish the distinction of degrees of care, skill, and diligence required in the performance of various duties and the fulfilment of various contracts, we think they go too far; since the requirement of different degrees of care in different situations is too firmly settled and fixed in the law to be ignored or changed." See also *Preston* v. *Prather*, 137 U. S. 604, 11 S. Ct. 162, 34 L. Ed. 788, and *Briggs* v. *Spaulding*, 141 U. S. 132, 11 S. Ct. 924, 35 L. Ed. 662. As a matter of fact the classification of negligence into appropriate grades is too natural to be ignored. *First State Bank* v. *Connoley*, 131 Va. 479, 109 S. E. 301; *Yates* v. *Ley*, 121 Va. 265, 92 S. E. 837.

"The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court." *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 417, 12 S. Ct. 679, 683, 36 L. Ed. 485; *Norfolk & W. Ry. Co.* v. *Mace*, 151 Va. 458, 145 S. E. 362.

Negligence lies in the omission of due care in the performance of some duty. 'That duty varies in each case as the facts vary, and so some particular act which would be actionable negligence under one set of circumstances would give no basis for recovery in another. (Gross negligence *quoad* a passenger might not be negligence at all were we dealing with a trespasser and so the distinction in grades of negligence is at times not very important, if we will bear in mind shifting standards of duty) Conduct reasonable in passing a group of men on a highway might be highly negligent were that group made up of children. *Price* v. *Burton*, 155 Va. 229, 154 S. E. 499.

Such loss of elasticity as lies in the refusal of courts to recognize varying grades of negligence finds measurable compensation in the fact that negligence itself is an elastic term. The same act may be at one time actionable and at another, not, and changes with its setting.

In *Massaletti* v. *Fitzroy*, *supra*, the court said that, apart from all authority, "justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous

undertaking, the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing."

With this we are in cordial accord and it is of small moment whether we hold that "gross negligence" was necessary or that small care was due.

■ ■ To hold that a guest who, for his own pleasure, is driving with his host may recover from him for injuries suffered where there is no culpable negligence, shocks one's sense of justice. The driver is often not an expert and makes no implied representations beyond these, namely, that he will not knowingly or wantonly add to those perils which may ordinarily be expected and that there are no known defects in the car which make its operation particularly hazardous. Moreover, he should disclose to his guest any other peril not patent. Beyond this all risks are assumed. While automobiles in themselves may not be dangerous instrumentalities yet their use carries with them dangers that cannot be forgotten.

■ The application of those principles noted to any particular case is frequently difficult, for only ordinary risks are assumed and recklessness should, and does, make the driver liable.

■ We have seen that this defendant on a dark night drove his car along the outside edge of a slightly curved road and on its right-hand side, measured by the direction in which he was going. Had he failed to keep to the right and had a collision followed, he might have been held liable. He did keep to the right and by chance a trifle too far to the right, so that his right wheel ran from the hard surface into the soft shoulder. If there was negligence at all this was it. It is not claimed that he failed in any duty afterwards. It is not *per se* negligence for the outside wheel of any automobile, traveling at a reasonable rate, to run off the macadam. Indeed it is an everday occurrence. If

plaintiff is to prevail, we must hold that such an incident is in itself negligence, and this we cannot do, no matter what standard we might adopt measuring the duty to a guest.

It is true that in *Glass* v. *Huddleston*, 155 Va. 143, 154 S. E. 506, the question of negligence was submitted to the jury, but in that case the defendant drove from the hard surface to the shoulder. He did this purposely and the accident which followed was due to a half concealed hole in the shoulder itself, seven feet from the macadam. Here there was no purpose to leave the road. The car's wheels were inadvertently driven too close to its edge and slipped off. That is all that the plaintiff has to go upon and it is not sufficient.

We think that the judgment appealed from should be sustained and it is so ordered.

*Affirmed.*

GREGORY, J., dissents.