Margaret Wright SMITH, Appellant,

v.

R. R. ALLEN, II, Appellee.

No. 8392.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 17, 1961.

Decided Dec. 7, 1961.

William N. Stovall and Thomas L. Woodward, Suffolk, Va., for appellant.

Spencer Gill, Norfolk, Va. (Rixey & Rixey, Norfolk, Va., on brief), for appellee.

Before SOPER and BRYAN, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

Appellant, Mrs. Margaret Wright Smith, plaintiff below, instituted this diversity action against appellee, R. R. Allen, II, defendant below, seeking to recover damages for personal injuries resulting from a fall which she sustained on a small pier extending into Chuckatuck Creek in Nansemond County, Virginia, maintained and controlled by Allen as a part of his premises. Plaintiff grounded her action on the allegation of negligence on the part of the defendant in the maintenance of his pier. The action came on for trial with a jury, and at the conclusion of plaintiff's evidence, defendant moved for a directed verdict. Although strongly intimating that defendant's motion was sound, the court overruled the motion for a directed verdict without prejudice. Whereupon, defendant rested without introducing any evidence in his behalf, and renewed his motion for a directed verdict, which motion the court granted and entered judgment upon the directed verdict. After the court denied her motion to set aside the verdict and grant a new trial, plaintiff prosecuted this appeal.

Of course, in this situation, plaintiff's evidence, and all reasonable inferences to be drawn therefrom, must be taken as true. But before stating the facts, it is necessary to first pass upon the admissibility of certain important testimony which the District Court considered as inadmissible hearsay. It appears from the record that some time after the accident, and before the institution of this action, while Mrs. Smith and Allen were having a conversation in Allen's store, one Boyce, an employee of Allen, who had been engaged in the repair or reconstruction of the pier under the direction of Allen immediately prior to the accident, came up to where Mrs. Smith and Allen were talking, and within the hearing of both of them, told Allen "that he had seen the place where she (Mrs. Smith) went through and the board was rotten". Allen did not deny this statement. Inasmuch as this statement, that the board was rotten, was not made by the defendant, but was made by Boyce, who was not a party to the suit, the District Judge considered the statement as inadmissible hearsay and gave it no consideration.

If this evidence was admissible under Virginia law, it was admissible in the trial of this case in the District Court. Rule 43(a), F.R.Civ.P., 28 U.S.C.A. The applicable Virginia law as to this question, is clearly stated in Tillman v. Commonwealth, 185 Va. 46, 37 S.E.2d 768, 773, as follows:

"It is well settled that statements made in the presence and hearing of another, to which he does not reply, are admissible against him as tacit admissions of their truth or accuracy, when such statements are made under circumstances naturally calling for reply if their truth is not intended to be admitted. This principle rests upon the universal rule of human conduct which prompts one to repel an unfounded imputation or claim."

If the party against whom the imputation is made promptly denies the imputation, then there is no acquiescence in its truth, no implied admission of guilt, and therefore evidence of such imputation is inadmissible. Pinn v. Commonwealth, 166 Va. 727, 186 S.E. 169. Likewise, evidence of an accusation of guilt, made in the presence of an accused person, is not admissible unless

the accusation was made under such circumstances as would naturally call for a reply. In Knight v. Commonwealth, 196 Va. 433, 83 S.E.2d 738, an accusation against an accused in the custody of police was made in his presence, and not immediately denied. However, he had previously denied his guilt, and again denied it immediately after the conclusion of the interview with his accuser. Although recognizing the general rule, as stated above, the court held that, under the circumstances of this case, the accused having consistently denied the accusation against him, the evidence of the accusatory statement having been made in his presence and his failure to immediately deny it, was not admissible.

The Supreme Court of Appeals of Virginia has applied the general rule as stated in Tillman v. Commonwealth, supra, not only in the criminal cases of Owens v. Commonwealth, 186 Va. 689, 43 S.E.2d 895, and James v. Commonwealth, 192 Va. 713, 66 S.E.2d 513, but also in the civil case of Sanders v. Newsome, 179 Va. 582, 19 S.E.2d 883. See also 31 C.J.S. Evidence § 294 et seq., p. 1057 and 4 Wigmore on Evidence (3d ed.) 70, (par. 1071 et seq.)

Here, Boyce's statement that the board which broke and caused Mrs. Smith to fall was rotten, was made not only in the presence of defendant Allen, but in the presence of Mrs. Smith, the plaintiff. This statement was an imputation strongly suggesting negligence on the part of Allen. Admittedly, Allen heard it, and did not deny it. He knew that Mrs. Smith had been severely injured, and if he did not actually know that Mrs. Smith was asserting a claim against him for damages, he had every reason to believe that she would. It is our conclusion that the circumstances then existing brought the evidence of Boyce's statement within the ambit of the general rule of Virginia law as stated above, and it should have been admitted, and considered by the District Judge as tantamount to an admission by the defendant. Considering the evidence as to Boyce's statement as admitted, and viewing the evidence in the light most favorable to the plaintiff, the facts may be briefly stated as follows:

On or about June 24, 1958, plaintiff, Mr. Margaret Wright Smith, an active woman, sixty years of age, as an invited guest, came to visit defendant, R. R. Allen, II, who was her nephew, at his home on Chuckatuck Creek in Nansemond County, Virginia. When she arrived she saw, and was told, that the private pier, owned by Allen and extending from his lawn out into the creek, was being repaired. The repair of the pier consisted in a renewal of its superstructure, and for the renewal, used pallets, 43 inches square, were acquired by Allen from the store of Lipton Tea Company at nearby Suffolk. These pallets were of oak or gum planking nailed across 2 x 4 supports. To fill the "places and voids" in the pallets, used planking, 5 or 6 inches wide and $\frac{1}{2}$ to $\frac{5}{8}$ inches thick, was used. Although both the pallets and the boards used to fill in, were of used lumber, only casual inspection of them was made. The actual work on the pier was done by one Boyce, an employee of Allen under Allen's direction. There was no hand rail on the pier, although it was quite narrow, approximately 43 inches wide. During the evening of June 27, 1958, Allen told Mrs. Smith that the repair of the pier was finished. The next morning, Mrs. Allen, followed by Mrs. Smith and the Allens' small boy, walked out on the pier intending to fish from the end of it. While she did not minutely examine each plank before stepping on it, she was looking where she was going, and saw nothing to indicate danger. As Mrs. Smith was walking along the pier, very suddenly a board which she had stepped on broke and her left leg went down through the pier beyond the knee, which caused her to fall on her back with her leg under the pier. She was unable to extricate herself without assistance. Mrs. Allen called her husband, who was in a boat nearby. He came, saw what had happened, helped to extricate Mrs. Smith, and sent her to a hospital. The board

which broke and caused Mrs. Smith to fall, was rotten, and this fact was known, or should have been known, to Boyce, Allen's employee who placed the board in the pier, only a few days before the accident. Allen gave Mrs. Smith no warning that the pier, or any part of it, was unsafe. Mrs. Smith sustained painful and serious injuries, including "a complete fracture of the articular surface of the left tibia". She incurred substantial expenses in the treatment of her injuries, which persisted to some extent at the time of the trial.

At the trial of this case, counsel for both plaintiff and defendant took the position that, at the time of her injury, the plaintiff was an invitee, to whom the defendant owed the duty of exercising ordinary care for her safety. The plaintiff was visiting in the home of defendant, as an invited guest, and certainly, from a social standpoint, she was an invitee. However, by the weight of authority, it would not seem that she was an invitee in the legal sense of the word. Since plaintiff's cause of action arose in Virginia, her right to recover is determined by the law of Virginia. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. No Virginia authority has been cited to us, nor do we find any, which deals precisely with the legal status of a social guest and the legal duties of a host to such a guest. In discussing the status of persons on the property of others, in a leading Virginia case, Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S.E. 813, 815, 38 A.L.R. 391, the court said:

"But it is sometimes difficult to determine whether the circumstances make a case of invitation, in a technical sense, or of mere license. *Usually, an invitation will be inferred where the visit is of common interest or mutual advantage to the parties, while a license will be inferred where the object is the mere pleasure or benefit to the visitor.*"

(Italics supplied.)

In the same opinion, the court went on to delineate the duties owed to persons in different categories on the premises of another, as follows:

" * * * Trespassers and bare licensees, as a rule, take the risk of the place as they find it. Generally, the owner or occupant of the soil does not owe to a trespasser the duty of prevision, preparation, or lookout, but only the duty not to injure him intentionally or wantonly. If, however, the trespass is of such nature and so frequent as to charge the occupant with notice thereof, and of the danger likely to ensue to the trespasser, then the owner is chargeable with the duty of lookout for such trespasser, with such equipment and appliances as he is then using in the ordinary conduct of his business; but he does not owe him the duty of prevision or preparation.

"In the case of licensees, the occupant is charged with knowledge of the use of his premises by the licensee, and, while not chargeable with the duty of prevision or preparation for the safety of the licensee, he is chargeable with the duty of lookout, with such equipment as he then has in use to avoid injury to him at the time and place where the presence of the licensee may be reasonably expected. The duties of the occupant to the licensee and to the known frequent trespasser are the same, but the licensee is exempt from the responsibilities of a trespasser.

"The duties of the occupant to the invitee are entirely different. The latter comes by invitation, express or implied, and may reasonably expect to come with safety. The invitation, however, is rarely, if ever, unlimited, and especially when implied, but to the extent of the invitation the occupant owes to the invitee the duty of prevision, preparation, and lookout. He must use ordinary care to see that his premises are in a reasonably safe condition for the use of the invitee in the

manner, and to the extent, that he has invited their use. * * *"

However, at the conclusion of this discussion, the court said:

"*We express no opinion as to the rights of house guests or the duties owing to them.*" (Italics supplied.)

In none of the Virginia cases on the subject of the duties of one in possession of land to others who have come thereon, which are numerous, do we find any discussion of the status of a social guest in the home of another. We do find *dicta* which at least suggest that a social guest in the home of another by invitation, might be given the status of an invitee. For instance, in Richmond, etc., Railway Co. v. Moore's Adm'r, 94 Va. 493, 27 S.E. 70, 71, 37 L.R.A. 258, after holding that the plaintiff was on the premises of the defendant pursuant to a business invitation and therefore entitled to ordinary care, the court went on to say, *obiter*:

"The principles of law upon which the right of recovery rests in a case like this are well settled. Mr. Cooley, in his work on Torts (2d Ed., p. 718), says: 'It has been stated on a preceding page that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business *or any other purpose*, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.'

"In the more recent work of Buswell on Personal Injuries, the law is well stated in section 66 as follows: 'If a person enters upon premises on business to be transacted with the owner or occupant thereof, or by the procurement of the owner or occupant, and, being himself in the exercise of due care, is injured by reason of the unsafe condition of the premises or the approaches thereto, such unsafe condition being known, or such as ought to have been known, to the owner or occupant, the latter will be answerable in damages for such injuries.' And in section 70 he says: 'It is apprehended that the responsibility of the owner or occupant of land or buildings is the same towards persons entering his premises, whether these come upon business to be transacted with the owner or occupant, or at his solicitation, or *upon his mere invitation*, since in any of these cases the entry is by his procurement or inducement, and, not by his mere acquiescence or against his will.' * * *" (Italics supplied.)

In Nesbit v. Webb, 115 Va. 362, 79 S.E. 330, 331, the court quoted from a Supreme Court opinion as follows:

"In Bennett v. [Louisville & N.] Railroad Co., 102 U.S. 577, 26 L.Ed., 235, Mr. Justice Harlan, speaking for the court, says that the rule founded in justice and necessity and illustrated in many adjudged cases in the American courts is: 'That the owner or occupant of land who, *by invitation, express or implied*, induces or leads others to come upon his premises, *for any lawful purpose,* is liable in damages to such persons (they using due care) for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation.' " (Italics supplied.)

In Raylass Chain Stores, Inc., v. De Jarnette, 163 Va. 938, 178 S.E. 34, 35, plaintiff was a customer in defendant's retail store and obviously a business invitee. In its opinion, the court said:

"This court, in accord, with the general rule, has held that, when the owner or occupant of lands or buildings either expressly or impliedly *invites* others to come upon his

premises, whether for business *or any other purpose*, it is the duty of the owner or occupant to be reasonably sure that he is not inviting them into danger, and therefore it is incumbent upon him to exercise ordinary care and prudence to render the premises reasonably safe for the visit. See Richmond & Manchester Railway Co. v. Moore's Adm'r, 94 Va. [493] 504, 27 S.E. 70, 37 L.R.A. 258." (Italics supplied.)

However, it is to be noted that the case cited as authority for this general statement of Virginia law, Richmond & Manchester Railway Co. v. Moore's Adm'r, supra, was not a case involving a social guest, plaintiff having been a business visitor. In all these cases, the court was dealing with situations where the plaintiff was an invitee, his visit being "of common interest or mutual advantage to the parties." Pettyjohn & Sons v. Basham, supra [126 Va. 72, 100 S.E. 815.] It cannot be said that the broad language italicized above is sufficient to base a holding that a social guest is an invitee under Virginia law.

While we find no Virginia decisions establishing the status of a social guest in the home of another and stating the degree of duty owed by the host to his guest, we cannot overlook the analogy between this situation and that of a guest passenger in the automobile of another. This latter situation has been the subject of numerous decisions of the Supreme Court of Appeals of Virginia, and, since 1938, has been covered by statute. The pilot case on the subject of the duty of a host to his guest passenger in an automobile, is Boggs v. Plybon, 157 Va. 30, 160 S.E. 77 (1931). The court recognized that one line of cases, of which Massaletti v. Fitzroy, 228 Mass. 487, 118 N.E. 168, L.R.A.1918C, 264, Ann.Cas.1918B, 1088, was typical, held that it was necessary for a guest passenger to prove gross negligence in order to recover from his host, and another line of cases, of which Dickerson v. Connecticut Co., 98 Conn. 87, 118 A. 518, was typical, held that "Ordinary care is the yardstick to be applied." [157 Va. 30, 160 S.E. 80] The Virginia court chose to follow the Massaletti case and quoted from it, with approval, as follows:

"Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing."

The Virginia court went on to say:

"To hold that a guest who, for his own pleasure, is driving with his host, may recover from him for injuries suffered where there is no culpable negligence, shocks one's sense of justice. The driver is often not an expert and makes no implied representations beyond these, namely, that he will not knowingly or wantonly add to those perils which may ordinarily be expected and that there are no known defects in the car which make its operation particularly hazardous. Moreover, he should disclose to his guest any other peril not patent. Beyond this all risks are assumed. While automobiles in themselves may not be dangerous instrumentalities, yet their use carries with them dangers that cannot be forgotten.

"The application of those principles noted to any particular case is frequently difficult, for only ordinary risks are assumed and recklessness should, and does, make the driver liable."

Finding that in this case defendant's negligence, if any, fell far short of gross negligence and was so slight as not to

be actionable, the court affirmed the action of the lower court in sustaining defendant's demurrer to plaintiff's evidence.

The doctrine of Boggs v. Plybon, supra, was shortly thereafter applied to a different state of facts, in Jones v. Massie, 158 Va. 121, 163 S.E. 63, and has been followed in numerous cases since.

In 1938, a statute was enacted representing "a legislative codification of the gross negligence rule as established in the State by the case of Boggs v. Plybon, [supra], and applied in other cases." The statute is as follows:

> "*Liability for death or injury to guest in motor vehicle.*—No person transported by the owner or operator of any motor vehicle as a guest without payment for such transporation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Code of Virginia 1950, Sec. 8–646.1.

The determination of whether a given state of facts constitutes simple negligence or gross negligence, has been difficult, as the court prophesied in the Boggs v. Plybon opinion. Generally, the question of whether gross negligence has been established has been left to the jury. In Alspaugh v. Diggs, 195 Va. 1, 77 S.E.2d 362, 364, the court said:

> "Proof of gross negligence depends upon the facts and circumstances of each particular case. If reasonably fair-minded men may differ as to the conclusion of fact to be drawn from the evidence, a jury question is presented; if reasonably fair minded men may not differ as to such conclusion of fact, the question of whether gross negligence has been established becomes one of law to be decided by the court notwithstanding the verdict of the jury. Lennon v. Smith, 173 Va. 322, 2 S.E.2d 340."

In footnotes to this opinion, the cases since Boggs v. Plybon, supra, have been collected and cited, first in the category where the evidence of gross negligence was held insufficient to submit to the jury, and second, the cases in which it was held that gross negligence had been established or in which the evidence was sufficient to present a jury question. It is noteworthy that, in these footnotes, the cases in which it was held that gross negligence was established or that the evidence was sufficient to present a jury question, are in a substantial majority.

In an annotation entitled "Liability for injury to guest in home or similar premises," following Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693, 25 A.L.R.2d 592, it is said that the courts have variously described the status of a social guest as that of a licensee, mere licensee, bare licensee, or gratuitous licensee. The annotator said (25 A.L.R.2d p. 600):

> "Any difficulties arising from the attempts to fit a social guest into the standard classifications of status have affected only the rationalization of the decisions, however, since the results of the cases display a commendable unanimity in holding that a social guest injured by a defect in the premises may not recover against his host in the absence of evidence establishing something more than ordinary negligence in the maintenance of the premises. More specifically, it has been held that a guest can recover only where his injury is the result of active and affirmative negligence of the host while the guest was known to be on the premises, or of the failure of the host to remove or warn against defects amounting to a trap or pitfall known by the host to present a danger to the guest, and which he also

knows the guest will not, in the exercise of reasonable care, discover and avoid for himself. * * * "

In 28 Am.Jur. 778, there appears the following interesting discussion:

"Par. 117. *Social Guest.*—Although there is not a great deal of authority upon the point, the rule appears to be that the relation between host and guest is not that of invitor and invitee, but that of licensor and licensee, and that, in accord with the general principle which determines liability of an owner or occupant of premises to one who comes thereon as a mere licensee, the host is not liable for an injury sustained by the guest from some defect in the condition of the premises, except as the licensee is needlessly exposed to peril through the failure of the owner or occupant to warn him of danger, or by the active negligence of the owner or occupant. There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. The guest assumes the ordinary risks which attach to the premises. No exception is made to the rule because of the fact that the guest enters on the host's express invitation to enjoy his hospitality. It is said that the owner or occupant must have a beneficial interest in a visit in order to impose upon him the duty of using reasonable care in having the premises in a safe condition for the visitor, and that the intangible advantages which arise from mere social contacts do not comprise such an interest. A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have. However, the rule is that a host who knows of a concealed danger upon the premises is guilty of negligence if he permits the guest, unwarned of the peril, to come in contact therewith, and he may be held liable to the guest for an injury thus sustained."

In the Restatement of the Law of Torts, a social guest is given the status of a "gratuitous licensee" and the liability of possessors of land to gratuitous licensees, is stated as follows (p. 932, par. 342):

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care, (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein."

Illustration No. 4 (p. 934) seems to us apposite:

"4. A invites a friend, B, to take dinner with him at his country place at eight o'clock on a winter evening. A knows that a bridge in his driveway over which B must pass to reach A's house is in a dangerous condition which is not observable in the dark. A does not tell B of this fact. The bridge gives way under B's car, causing B serious harm. A is liable to B."

Since this seems to be a case of novel impression in Virginia, it would be more appropriate for a Virginia court to declare the status of Mrs. Smith and the duty which Allen owed to her while she was a guest in his home. However, since these questions are before us, it becomes necessary for us to decide them. As to nomenclature, we are content to follow the Restatement of the Law of Torts,

supra, and to denominate Mrs. Smith as a "gratuitous licensee."

■ We cannot fail to be impressed by the fact that, in establishing the gross negligence rule as to a guest passenger in an automobile, the Virginia court, in Boggs v. Plybon, supra, chose to adopt the Massachusetts rule declared in Massaletti v. Fitzroy, supra. Subsequent to the Massaletti decision, the question of the duty owed by a host to his social guest has come squarely before the Massachusetts court in Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 589, 92 A.L.R. 1002. Holding that the host was only liable to his social guest for gross negligence, the court said:

> "After full discussion and mature deliberation, with exhaustive review of the authorities, this court speaking through Loring, J., held in Massaletti v. Fitzroy, 228 Mass. 487, 118 N.E. 168, L.R.A.1918C, 264, Ann. Cas.1918B, 1088, that a guest riding gratuitously in the motor vehicle of the defendant at his invitation could not recover compensation for personal injuries caused by its negligent operation, but must establish gross negligence in its operation in order to prevail. That decision, in our opinion, governs the case at bar in principle. There would be an incongruity in holding the guest and host in the case at bar to the strict rules of negligence based on commercial relations and in holding that the same relation when applied to a guest and host in an automobile gives rise to liability only when the defendant is grossly negligent. * * * "

We are of the opinion that the Virginia court would draw the same analogy and apply the rule of Boggs v. Plybon, supra, to the relationship between a host and his social guest. It would certainly be illogical for the gross negligence rule to be applied to one's guest in an automobile and the ordinary negligence rule to be applied to a social guest in one's home. Sound reasoning would seem to sanction the application of the gross negligence rule to a purely social guest in the home or on the premises of his host. We therefore hold that in this case Mrs. Smith would not be entitled to recover except upon proof of gross negligence on the part of the defendant.

■ Again turning to the Restatement of the Law of Torts, supra, for its more detailed statement of the duty of a host to his social guest, we hold that in this case the defendant, Allen, owed to the plaintiff, Mrs. Smith, the duty not to cause her bodily harm by a natural or artificial condition on his premises, if he knew of the condition, and realized that such condition involved an unreasonable risk to Mrs. Smith, and had reason to believe that she would not discover or realize the risk, and invited or permitted her to enter and remain upon and use his premises without exercising reasonable care to make the condition reasonably safe, or to warn her of the condition and risk involved. The jury might well find that a breach of this duty constituted gross negligence.

Applying this standard to the facts of this case, we hold that the evidence was sufficient to present a jury question, and that it was error on the part of the District Judge to direct a verdict for the defendant. The jury might reasonably have found from the evidence that, in the repair and reconstruction of his pier, Allen made use of used lumber without reasonably careful inspection; that he included in the superstructure a rotten board which was insufficient to bear the weight of an adult person and which broke when Mrs. Smith stepped upon it; that through his employee, Boyce, he knew, or was charged with notice, that the rotten board was placed where persons using the pier would step on it, and that the fact that this board was rotten and defective could not be detected by a person walking along the pier and exercising reasonable care for her own safety; that Mrs. Smith was invited to go on the pier with Mr. Allen's wife and small child, and that no warning was given Mrs. Smith of the dangerous condition

**244**

of the pier and the risk involved in walking on it.

It follows that the judgment of the District Court is reversed and this action will be remanded for a new trial not inconsistent herewith.

Reversed and remanded.