MARY E. MILLMORE *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. November 20, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence. Street Railway. Carrier.*

The reasonable care which a common carrier of passengers must exercise toward a passenger is the highest degree of care which is consistent with the proper transaction of its business.

At the trial of an action by a woman against a street railway company for injuries caused by the sudden starting of a crowded open car of the defendant on a very dark night while the plaintiff was on the running board picking up a bundle from the floor of the car before alighting, it is error for the presiding judge to instruct the jury that the highest degree of care required from the defendant as a carrier of passengers made it the duty of the conductor before starting his car to move even to the extent of getting off the car to see whether the plaintiff had got off. The true rule is that in such a case a conductor before starting his car is bound to know, if by the exercise of due care, caution and diligence in the discharge of his duties he can know, whether any person is getting on or off the car.

The fact that a conductor of a street car has waited a reasonable time for a passenger to get on or off the car does not give him the right to start the car until

he has exercised the highest degree of care consistent with the performance of his other duties to see that the passenger is on or off the car as the case may be:

TORT against a street railway company for personal injuries incurred while the plaintiff was a passenger on an open electric car of the defendant from being thrown to the ground by the sudden starting of the car as the plaintiff was attempting to. alight from it.  Writ dated September 15, 1903.

At the trial in the Superior Court before *Bond,* J. the jury returned a verdict for the plaintiff in the sum of $3,600.  The defendant alleged exceptions, including an exception to a portion of the judge's charge which is quoted in the opinion and another exception to another portion of the charge relating to damages which the decision of the court has made immaterial.

*E. P. Saltonstall,* (*S. H. E. Freund* with him,) for the defendant.

*T. F. Vahey,* for the plaintiff.

HAMMOND, J.  The plaintiff, a woman fifty-six years old, testified that she took in Boston an open car of the defendant which was bound for Watertown ; that she sat in the sixth seat from the rear of the car, on the extreme left hand, and had a bundle and hand bag with her; that a number of men afterwards boarded the car "at a point before the one where she intended to alight," and that some of the men remained standing; that she desired to get off at Royal Street in Watertown, and upon her signal to the conductor he stopped the car there; that she got down on the left hand running board and then for the first time attempted to pick up the bundle which she had placed upon the floor of the car ; and that while she was in that position the conductor started the car, by reason of which she was thrown to the ground and injured.  She was corroborated by several witnesses as to what occurred after she boarded the car.  One Blakeney testified that at the time of the accident he was engaged in a dispute with the conductor as to whether the witness had paid his fare.  The evidence showed that the accident took place at a few minutes before eleven o'clock, P. M., on Saturday, July 18, 1903, and that the night was very dark.  At the time of the trial the conductor was dead, and it was agreed that the only statement made by him before his death was that

contained in his report made out at the time of the accident, to the effect that "he did not see the lady fall, but was told by another passenger that she had fallen."

It was contended by the defendant that the conductor had waited a reasonable length of time before starting his car, and that under all the circumstances, considering the number of passengers and the length of time that he had waited, it was a question for the jury whether before starting the car he had not done all that was required of him.   Upon this point the judge, after stating the question to be whether the conductor exercised "the highest degree of care that could be exercised under the circumstances to see that she [the plaintiff] had an opportunity to get off and the car was not started until she had had that reasonable opportunity to get off and to take her bundles off," proceeded thus: "But the highest degree of care would require the conductor to move if he was not in a position to see whether the passenger was off; the highest degree of care would call upon him to move, and even to the extent of getting off his car if he could not do any other way, to see whether a passenger was off. The question whether the conductor did all he could to see — it is for you to consider.   But he ought not to have started the car until the passenger had an opportunity to get off and a reasonable opportunity, and he should have looked out to see whether she was off.   It was not enough that he waited a certain length of time."   At the close of the charge the defendant specifically objected to that portion of it wherein it was stated in substance that the highest degree of care required the conductor to move even to the extent of getting off his car to see whether a passenger was off.   We have no doubt that in many cases a jury might find that a conductor should move from his car to ascertain whether a passenger was fairly off or fairly on the car.   But we understand that by the language of which the defendant complains the judge meant that as matter of law a conductor of a street car does not come up to the requisite degree of care unless he actually sees whether the passenger is fairly off or fairly on the car, as the case may be.

Common carriers are not the insurers of the life or the safety of their passengers.   They are held to reasonable care only; and, briefly stated, that care when applied to them means the highest

care consistent with the proper transaction of their business.   As to the nature of this care, the following language by Knowlton, J., in *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 218, is instructive: " Difficulty in the application of this rule has sometimes come from an improper interpretation of the expressions ' utmost care and diligence,' ' most exact care,' and the like. These do not mean the utmost care and diligence which men are capable of exercising.   They mean the utmost care consistent with the nature of the carrier's undertaking, and with a due regard for all the other matters which ought to be considered in conducting the business.   Among these are the speed which is desirable, the prices which passengers can afford to pay, the necessary cost of different devices and provisions for safety, and the relative risk of injury from different possible causes of it.   With this interpretation of the rule, the application of it is easy.   As applied to every detail, the rule is the same.   The degree of care to be used is the highest; that is, in reference to each particular it is the highest which can be exercised in that particular with a reasonable regard to the nature of the undertaking and the requirements of the business in all other particulars."

Applying this to the action of the conductor, it will be seen that on the one hand the rule is not that the conductor of a street car, after waiting a reasonable time for a passenger to get on or off, as the case may be, may start without taking any pains to see whether the passenger is either on or off.   The conductor has not performed his duty when he has simply waited a reasonable time.   He must exercise reasonable care, as above defined, to see that the passenger is on or off the car.   On the other hand, the rule is not that he must absolutely see whether the passenger is on or off.   In this, as in every other detail, there is resting upon him the same degree of care, namely, the highest care consistent with the proper transaction of the business; and, if he has exercised that degree of care, he has not been negligent. In the case before us that was the degree of care imposed upon this conductor.   The plaintiff has cited to us several text books and cases in support of the proposition laid down by the trial judge in this case, but in many of them it is plain from the context that when the court says that the conductor must see that the passenger is on or off the meaning is that he must use the

highest degree of care to see it. See, for instance, the language of Fuller, C. J., in *Washington & Georgetown Railroad* v. *Harmon*, 147 U. S. 571, 582. The rule is properly stated in *North Chicago Street Railroad* v. *Cook*, 145 Ill. 551, 557, a case cited by the plaintiff: " Carriers of passengers are held to the exercise of the utmost or highest degree of care, skill and diligence for the safety of the passenger that is consistent with the mode of conveyance employed. The car or train was in control of the conductor, and he was required to know, if by the exercise of due care, caution and diligence in the discharge of his duties he could know, whether any person was attempting to get on or off his train or car, before permitting the same to start in such manner as would be liable or likely to injure a person so getting on or off the same." This rule seems to us to be correct on principle and supported by the weight of authority, and so far as there are decisions elsewhere to the contrary we cannot follow them. We therefore think that the language excepted to was an erroneous statement of the law.

There is some ground for saying that this error was corrected by the court in a subsequent part of the charge, and so no harm was done to the defendant. A careful view of the whole charge, however, satisfies us that the error was not corrected, and the fact that the presiding judge did not strike out or modify the erroneous part even after his attention was specially called to it by the defendant's exception at the close of the charge, indicates that the judge still adhered to it as a view of the law by which the jury should be guided, and that the jury may properly have so understood. There was a mistrial.

The conclusion to which we have come on this part of the case makes it unnecessary to consider the other exceptions.

*Exceptions sustained.*