MARY A. RYAN *vs.* PITTSFIELD ELECTRIC STREET RAILWAY COMPANY.

Berkshire.   September 14, 1909. — October 19, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.   Street Railway.*

In an action by a woman against a street railway company for personal injuries caused by the starting of an open electric car of the defendant while the plaintiff was in the act of getting upon the car as a passenger and had one foot upon the running board, if the conductor of the car testifies that when he gave the signal to start the car he was standing at the front end of the car on the opposite side, where he could not see whether anybody was trying to get upon the car from the side where the plaintiff was, and that at this stopping place passengers were accustomed to get on upon either side of the car indifferently, this is evidence of negligence on the part of the conductor.

In an action against a street railway company for personal injuries caused by the starting of an open electric car of the defendant while the plaintiff was in the act of getting upon the car as a passenger, if it appears that the conductor gave the signal to start the car when he was standing at a place on the car where he could not see whether an intending passenger was boarding the car, the question whether it was negligent for the conductor to give the signal for starting the car without going where he could see whether any one was getting upon it is for the jury, even if the car had made a reasonably long stop and the plaintiff had had ample opportunity to get on the car and the conductor's position was not shown to have been an improper one.

A woman who is attempting to board an electric car which in response to her signal has been stopped to accept her as a passenger is not bound to anticipate that the car will be started while she is in the act of getting upon it, and therefore she is not negligent as matter of law in attempting to board such a car without paying attention to the ringing of a bell to start it, although the car already has stopped a reasonable time to afford her ample opportunity to have boarded it.

TORT against a street railway company for personal injuries sustained while boarding an open electric car of the defendant as a passenger at the junction of Park Street and Wahconah Street in Pittsfield on the evening of June 23, 1907.   Writ dated June 20, 1908.

In the Superior Court the case was tried before *Crosby,* J.   It appeared that the plaintiff and her sister had stationed themselves at the right hand side of a white post at the northwest corner of the junction of Park Street and Wahconah Street, and had signalled to the motorman to stop the car ; that the plaintiff's

sister was lame; that the motorman stopped the car at a point north of the white post, the rear end of the car being even with the post; that just north of the white post the ground was higher, and it was easier here to board the car; that the plaintiff and her sister, as the car began to stop, went to the north side of the white post to a place at about the middle of the car and here the plaintiff, after the car stopped, assisted her sister to board the car ; that while the sister was on the running board in the act of boarding the car, the plaintiff attempted to board the car and while she was doing so the car started and the plaintiff was thrown off and injured. The plaintiff testified that when the car started she had hold of the handles with both hands, that her right foot was on the running board and her left foot was just leaving the ground ; that the car started with a jerk, and that when the car started she tried to hold on, but fell back.

One Levine, called as a witness by the defendant, testified that he was the conductor on the car at the time that the plaintiff was injured; that he stopped at the car barn and then started north; that he had a call to stop and rang the bell and the car stopped; that a lady got off on the road side ; that there were two or three that got on and the witness looked around and did not see anybody and jumped up on the high board " as he was kind of short" to reach the bell, and started the car; that he gave the motorman the signal to start; that before he started the car he looked about the car to see anybody, and did not see anybody on the running board or anybody having hold of the handles.

On cross-examination he testified that he was on the east side of the car, the side towards Wahconah Street; that this is the side opposite the sidewalk; that there were some people that got off on that side; that there were perhaps from sixty to eighty people in the car; that one person got off and two or three got on ; and that the witness was in the car at the front end, one seat from the front on the east side of the car. He then testified as follows: " Q. Could you see all of the opposite side of the car? A. Not all of it; no, sir. — Q. Could you see, from where you stood, whether there was anybody on the south side of the car? A. No, sir. — Q. Or from where you stood could you see whether there was anybody on the south side of the car that was partly

on the car?   A.  No, sir. — Q.  So that you started the car from a point where you did not know whether anybody on the opposite side was trying to get on or not?   A.  Yes, sir."

On re-direct examination he testified that at that point it was usual for people to get on and off the car on both sides, and that as many people got on and off on the sidewalk side as on the street side.

At the close of the evidence, the defendant asked the judge for the following instructions :

" 1.  On all the evidence the plaintiff is not entitled to recover.

" 2.  Though it is the duty of those having control and management of cars designed for traffic on the public streets to bring such cars to a full stop at such places as are convenient and necessary for the purpose of discharging and receiving passengers, it is no less the duty of passengers, in getting on or off such cars, to observe due precaution for their safety.

" 3.  If the jury should find that the car made at Park Street a reasonably long stop, and that it was a place where it was proper and convenient for passengers to get on and off the car at either side, and the plaintiff had ample opportunity to get on the car, and that it is not proven that the position in which the conductor was when he started the car was an improper position for him to be in, and that from there he could not see by the exercise of due care that the plaintiff was boarding the car as claimed by her, it was not negligence for the conductor to order the car started, nor for the motorman to start the car, without going about the car to see whether any one was still boarding the car.

" 4.  If the jury finds that the car stopped long enough so that the plaintiff had had ample opportunity to board the car, and that after the car had stopped a reasonable time to afford the plaintiff ample opportunity to have boarded the car, she attempted to board the car, as claimed by her, without paying attention to the ringing of the bell to start the car, she would not be in the exercise of due care."

The judge gave the second instruction as requested, and refused to give the first, third and fourth instructions, except so far as they afterwards were given in his charge.

At the conclusion of his charge, the judge, after stating the rule as to the liability of a street railway company as a common carrier of passengers in the language of previous decisions of this court, instructed the jury as follows: " Applying this to the action of the conductor, it will be seen that on the one hand the rule is not that the conductor of a street car, after waiting a reasonable time for a passenger to get on or off, as the case may be, may start without taking any pains to see whether the passenger is either on or off. The conductor has not performed his duty when he has simply waited a reasonable time. He must exercise reasonable care, as above defined, to see that the passenger is on or off the car. On the other hand, the rule is not that he must absolutely see whether the passenger is on or off. In this as in every other detail, there is resting upon him the same degree of care, namely, the highest care consistent with the proper transaction of the business; and, if he has exercised that degree of care, he has not been negligent. In the case before us that was the degree of care imposed upon this conductor."

The jury returned a verdict for the plaintiff in the sum of $3,700; and the defendant alleged exceptions.

The case was submitted on briefs.

*W. Turtle & J. M. McMahon,* for the defendant.

*J. F. Noxon & M. L. Eisner,* for the plaintiff.

SHELDON, J.   The first instruction requested by the defendant was that on the evidence the plaintiff was not entitled to recover. Manifestly this could not have been given. There was evidence that the plaintiff and her sister, standing at a proper place, signalled the defendant's car to stop and receive them as passengers; that the motorman saw them waiting for the car, must have seen their signal, and stopped the car accordingly; that while the plaintiff was in the act of getting on the car the conductor gave the signal to start the car, it started, and the plaintiff was thrown down and injured. The jury properly could find that the plaintiff was in the exercise of due care, and that the conductor was negligent in causing the car to be started before she had had opportunity to get fully upon the car. The conductor himself testified that when he gave the signal to start the car he was standing on the front end of the car where he could not see whether anybody was trying to get upon it at the side

where the plaintiff was, and that passengers at this point were accustomed to get upon either side of the car indifferently.

The second instruction requested was given.

The third request was not a correct statement of the law. Even if the car had made a reasonably long stop and the plaintiff had had ample opportunity to get on the car, and the conductor's position was not proved to have been an improper one, yet if from that position he could not see by the exercise of due care whether an intending passenger was boarding the car, it could not be said as matter of law that it would not be negligent for him to order the car to be started without going where he could see whether any one was boarding the car. The jury must determine this question. The instructions given as to this matter were correct and sufficient. *Millmore* v. *Boston Elevated Railway*, 194 Mass. 323, 326. *Rand* v. *Boston Elevated Railway*, 198 Mass. 569. *Lockwood* v. *Boston Elevated Railway*, 200 Mass. 537. *Marshall* v. *Boston Elevated Railway*, 203 Mass. 40.

The fourth request is defective in the same particulars as the third. As in the cases above referred to, it could be found that the defendant's servant had stopped the car in response to the plaintiff's signal; and had thereby invited her to become a passenger; and in that event, even if the circumstance mentioned in this request were found to exist, it could not be said as matter of law that she was necessarily negligent, or that she was bound to anticipate that the car would be started while she was about to board it. This case is unlike *Bentson* v. *Boston Elevated Railway*, 202 Mass. 377. It was for the jury to determine what the existing circumstances were and whether in view of those circumstances the plaintiff acted with proper regard to her own safety. This was the effect of the instructions given.

*Exceptions overruled.*