ANNIE S. HEAD *vs.* GRACE E. MORTON.

Middlesex.    November 7, 1938. — February 1, 1939.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Negligence*, Guest, Gratuitous undertaking, Motor vehicle. *Evidence*, Presumptions and burden of proof.

An answer by the defendant to an interrogatory of the plaintiff in an action for personal injuries resulting from conduct of his wife in operation of an automobile registered in their joint names, that he was "informed" that his wife did not invite the plaintiff to ride in the automobile, and testimony to the same effect by him at the trial together of actions by the same plaintiff against him and his wife, did not require submission to the jury, in the action against the wife, of the question, whether the plaintiff was a gratuitous guest, where all other evidence required a finding that she was such a guest.

Evidence that the defendant, operator of an automobile, had offered to transport the plaintiff and other fellow members of a women's club as her guests to her home, and that, after some had accepted her invitation and had entered the automobile and as the plaintiff was poised in the act of entering its open door, the defendant started the automobile, causing the open door to strike the plaintiff, required a finding that the plaintiff was a gratuitous guest of the defendant; and, the defendant having been found not to have been grossly negligent, judgment was ordered in her favor.

TORT. Writ in the Superior Court dated October 5, 1932.

The action was tried before *Brown*, J., with an action against the defendant's husband, the automobile which the defendant operated having been registered in the joint names of husband and wife. There was a verdict for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*M. Z. Kolodny*, (*M. T. Prendergast* with him,) for the defendant.

*H. Richter*, (*A. R. Brown* with him,) for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff on the first count of her declaration, which alleged that her injuries were sustained by reason of negligence in the operation of the defendant's automobile. It found for the defendant on the second count of the declaration, which alleged gross negligence of the defendant. It also answered in the negative the special question, submitted to it by the trial judge, which asked if the plaintiff was injured in consequence of the gross negligence of the defendant. The exceptions are to the denial by the trial judge of a motion for a directed verdict, to his refusal to give certain requests for rulings, and to a portion of his charge.

The plaintiff testified that she and the defendant were members of a club and that at one of its meetings in April, 1932, she, with other members, was invited to go to the defendant's house in Arlington. The members objected as they thought it was too far from the "car," but the defendant said she would come down with her automobile and meet all the members who could not come in their own automobiles. "Mrs. Morton told them when they arrived that she would come down and meet them." On the appointed day the plaintiff went to Arlington by street car with a Miss Hill who was the "guest of the day." Upon leaving the street car, she telephoned from a drug store to the defendant who said that she would "come down in a few minutes; which she did." A Miss Harris, who was the State regent of the "society" (club), met them in the drug store "to go up with them." Soon after, the defendant arrived in her

automobile and stopped at the sidewalk where the plaintiff, Miss Harris, and Miss Hill were waiting. The defendant "stopped the car and greeted us. And Miss Hill being a guest and the older person, I helped her into the . . . I turned and helped her into the car; I mean motioned her to get in. She got into the rear seat. I turned, expecting to go into the front seat, thinking I might; and as I turned, Miss Harris got in and shut the door. And I turned naturally to get in the back seat; and Mrs. Morton started the car and hit me, threw me." She was struck by the rear door which was open. She "was standing just ready to get into the car when the door struck . . . [her]." In answer to the question "Had you left the sidewalk before the door hit you?" she answered, "I was in the air. I hadn't left anything." Her right foot was in the air and her left foot was on the curbstone and she was "starting into the car in that motion."

The defendant testified that on the appointed day she was at her home "preparing luncheon for her guests who were to come to the club meeting," and that she received a telephone call from the plaintiff who told her that Miss Harris was with her and "as Miss Harris was our guest of honor, I said I would come down . . . ." She drove to the street corner where the plaintiff had told her she would be and stopped her automobile. Without getting out of her automobile, she reached across and opened the front door. At that time the plaintiff and Miss Hill were on the sidewalk. Miss Harris got into the front seat; Miss Hill got in and "then Miss Head started to get in, and she put her foot on the running board . . . ." She thought the plaintiff was in and was anxious "to be sure she didn't start the car until everybody was in." She had invited the club members to come to her house.

There is nothing in the evidence that makes the case any better for the plaintiff. In fact Miss Hill, the only other witness who testified as to what the plaintiff was doing just before her injury, said that "her [the plaintiff's] hand was on the door and her foot was on the running board . . ."; and the auditor who heard the parties in the first instance

found that the plaintiff was in the act of stepping from the gutter to the running board to get into the rear seat with "one of her hands taking hold of the car" when it started. The plaintiff contends, however, that the jury could have found there was no invitation by the defendant to the plaintiff to enter the automobile, for the reason that the defendant's husband, who was the defendant in a companion case tried with the case at bar, in answer to an interrogatory propounded to him in his case, answered: "I am informed that she [the defendant] did not" invite the plaintiff to ride in the automobile; and for the further reason that he testified at the trial that he "was informed the defendant never invited the plaintiff to enter the car." The answer to the interrogatory does not help the plaintiff, *McNiff* v. *Boston Elevated Railway,* 234 Mass. 252, 254, and the testimony of the defendant's husband at the trial amounts to nothing more than that he had been informed that the defendant never invited the plaintiff to enter the automobile. There is nothing to bring the case within the rule stated in *Whiteacre* v. *Boston Elevated Railway,* 241 Mass. 163, 165–166. The plaintiff therefore is bound by her testimony. *Sullivan* v. *Boston Elevated Railway,* 224 Mass. 405. *Fortune* v. *New York, New Haven & Hartford Railroad,* 271 Mass. 101, 104, and cases cited.

If the relationship of "host" and "guest" as these words are commonly used, subject to what was said as to this relationship in *Ruel* v. *Langelier,* 299 Mass. 240, 242, had come into existence at the time of the plaintiff's injury, she cannot recover. We are not aware that this precise question has been raised in any case where the facts are similar to those in the case at bar, and what is said hereinafter must be taken as applying to the facts in this case. There is no occasion or intent to lay down any general rule.

The plaintiff contends that the rule adopted in determining when a person becomes a passenger on a street car, see *Duchemin* v. *Boston Elevated Railway,* 186 Mass. 353, should apply in the case at bar. In the case just cited, the court said, at page 357, that it was not willing to go further than the doctrine stated in *Davey* v. *Greenfield & Turner's*

*Falls Street Railway*, 177 Mass. 106, that, when there has been an invitation on the part of the carrier by stopping for the reception of a passenger, any person actually taking hold of the car and beginning to enter it is a passenger. See *Fournier* v. *Holyoke Street Railway*, 258 Mass. 257, 259. In the *Fournier* case the defendant, apparently upon the assumption that the car was stopped to receive the plaintiff, and upon the further assumption that the car started upon the signal of the conductor before she had taken hold of the car and had begun to enter it by placing one foot on the step, as she had testified, asked for the following ruling: "If Mrs. Fournier did not have hold of the car for the purpose of boarding it when the signal for the car to start was given, she was not a passenger and the defendant did not owe her the duty it owed a passenger." The court, at pages 259–260, said: "This request was refused rightly. It is not true as an absolute proposition of law that a person cannot and does not become a passenger before he takes hold of the grab iron of a trolley car. That act is but a circumstance to justify an implication that the person desiring passage has offered himself to be carried and that such offer has been accepted by the carrier. . . . If the facts do not justify an implication that the traveller has offered himself and been received as a passenger, it is true" that a carrier does not owe him the duty it owes to a passenger.

A person, by signaling for a street car to stop, does not become entitled to the rights of a passenger. *Welsh* v. *Concord, Maynard & Hudson Street Railway*, 223 Mass. 184. It is the general rule that when a passenger has alighted from a street car his rights as a passenger cease. *Niles* v. *Boston Elevated Railway*, 225 Mass. 570, 572, 573. It was said, however, in the *Niles* case, at page 572, that "There may be cases where there is evidence to show that the carrier assumes to direct the movement of persons while upon the highway, or where such a duty rests upon it and where the facts justify the finding that although upon the highway, they are in the care of the carrier and the relation of passenger and carrier exists." There was a retrial of

the case just cited. See *Niles* v. *Boston Elevated Railway,* 230 Mass. 316. The plaintiff, who had been a passenger on one of the defendant's cars and had been given a transfer check for another car which was to carry her to her destination, had left the car in response to the conductor's direction to all passengers to leave. As she stepped from the car, an automobile came and proceeded slowly to the right of the plaintiff as she walked in the direction of the other car. After she had taken three or four steps she was struck by the overhang of the first car as it swung around the sharp curve leading into the car barn. The court, after referring to the previous decision in the case, said, at page 319: "But she [the plaintiff] was rightfully using the public way, and it was the duty of the defendant to use reasonable precaution to avoid injuring her." Nothing was said as to the plaintiff's status as a passenger, and the decision was only that the conductor of the car could have been found negligent in starting the car while the plaintiff was in such a perilous situation, and before she had an opportunity to reach a place of safety, without even warning her of the danger, unappreciated by her, to which she was exposed. Compare *Fairbanks* v. *Boston Elevated Railway,* 237 Mass. 127. In *McManus* v. *Boston Elevated Railway,* 262 Mass. 519, where the plaintiff in the course of his journey was required to change cars because of the construction of a new bridge and was injured by stepping into a hole in the street while alighting from the first car preparatory to crossing the bridge and taking another car on the other side, the court interpreted the relation of the parties to be that of carrier and passenger, as the journey of the plaintiff had not come to an end. Compare *Noonan* v. *Boston Elevated Railway,* 263 Mass. 305. This discussion does not take into account the rule adopted in cases where one is in a station or upon the premises of a carrier and may have the rights of a passenger before reaching the train or car which he intends to board. See *Warren* v. *Fitchburg Railroad,* 8 Allen, 227, 233; *Gurley* v. *Springfield Street Railway,* 206 Mass. 534.

The relationship between the carrier and passenger pre-

supposes a contractual basis, and the obligation of the former as to the care of the latter is an onerous one. *Millmore* v. *Boston Elevated Railway*, 194 Mass. 323, 325–326. *Gardner* v. *Boston Elevated Railway*, 204 Mass. 213, 216. The obligation begins when the person, in proper condition and in a proper manner, has put himself into the care of the carrier to be transported under a contract and is received and accepted as a passenger by the carrier. The carrier holds itself out as ready to receive as passengers all persons who present themselves in a proper condition and in a proper manner at a proper place to be carried. It invites everybody to come who is willing to be governed by its rules and regulations, and the decision of the question whether a person has so presented himself determines whether he has been accepted as a passenger. *Webster* v. *Fitchburg Railroad*, 161 Mass. 298.

We do not think the situation is quite the same in the case at bar. The principle involved in the so called "host" and "guest" cases is that laid down in the leading case of *Massaletti* v. *Fitzroy*, 228 Mass. 487, as pointed out in *Ruel* v. *Langelier*, 299 Mass. 240, 242. See *Dow* v. *Lipsitz*, 283 Mass. 132.

We think that the case at bar comes within the rule stated in *Ruel* v. *Langelier*, 299 Mass. 240, where it was said, at page 242: "Coming now to the case before us, it must be clear that the degree of the defendant's duty does not depend upon the physical position of the plaintiff at the moment of the accident, or upon whether she was then in the defendant's automobile or outside of it, or upon whether in everyday language she would be described as a guest. The degree of the defendant's duty depends upon whether the act of the defendant claimed to be negligent was an act performed in the course of carrying out the gratuitous undertaking which the defendant had assumed." It is true that in the case just cited the court said that the act of the defendant in backing the automobile against the plaintiff was a step in carrying out the gratuitous undertaking of transporting the plaintiff to her home "which had begun when the plaintiff first stepped into the automo-

bile," and which had never been abandoned. The plaintiff contends that this quoted portion of the opinion determines that the gratuitous undertaking of transporting a person does not begin until that person has "stepped into the automobile." But it was a fact in the *Ruel* case that the plaintiff, who had been in the automobile, had alighted and gone to its rear and the decision does not go so far as the plaintiff contends.

We think that the defendant in the case at bar had assumed the gratuitous undertaking of transporting the plaintiff to her home, and that her act in starting the automobile was a part of this undertaking. The contention that while the plaintiff "was in the air" with her "right foot in the air and . . . [her] left foot on the ground . . . starting into the car in that motion," within range of the open rear door, she could have changed her mind and withdrawn does not change the situation. The real test is to determine whether a gratuitous undertaking of the defendant had begun when the plaintiff was injured. The case is distinguishable from *Fone* v. *Elloian*, 297 Mass. 139. There it was pointed out, at page 140, that the defendant "no longer had, or assumed to have, any control over the person of the plaintiff. The plaintiff was free to go where he chose and to do as he wished."

We think the trial judge should have granted the defendant's motion for a directed verdict, and, this being so, there is no occasion to consider her other exceptions. The plaintiff took no exceptions. Entry is to be made of judgment for the defendant. G. L. (Ter. Ed.) c. 231, § 122.

*So ordered.*