## MAYER v. PURYEAR.
### No. 4662.

Circuit Court of Appeals, Fourth Circuit.
Nov. 14, 1940.

Aubrey R. Bowles, Jr., of Richmond, Va. (Earl W. White, of Norfolk, Va., on the brief), for appellee and cross-appellant.

Joseph F. Hall, of Richmond, Va., and Preston P. Taylor, of Norfolk, Va., for appellant and cross-appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the defendant (hereinafter called appellant), and a cross-appeal by the plaintiff (hereinafter called appellee), from a final judgment of the District Court for the Eastern District of Virginia in favor of the appellee and against the appellant in the sum of $3,500, plus interest and costs. The appellant in her appeal assigned as error the refusal of the District Court to set aside the verdict of the jury and the refusal of this court to enter final judgment for the appellant, pursuant to her motion under Rule 50(b) of the Federal Rules of Procedure, 28 U.S.C.A. following section 723c. The appellee based her cross-appeal on the failure of the District Court to set aside the verdict as inadequate in amount only and its refusal to empanel a new jury to assess damages in an amount which would be adequate.

Appellant, Catherine Mayer, the wife of Lieutenant Mayer (a naval officer aboard the U. S. S. Yorktown), had been residing in Norfolk, Virginia, for some time prior to the date of the unfortunate accident which formed the basis for this civil action. Appellee, Gladys Puryear (who sues by her father and next friend, Joseph Puryear), was a young girl residing with her parents in Norfolk. She was engaged to marry Ensign Wildt, a naval officer aboard the U. S. S. Boise. In the spring of 1939, both the U. S. S. Yorktown and the U. S. S. Boise were suddenly ordered from the Atlantic to the Pacific Coast. Appellant and appellee, who had been mutual friends, happened to be together when word came that each was to go to the West Coast—appellant and her children to join her husband; appellee, to marry Ensign Wildt. They thereupon arranged that appellee should make the trip with appellant and her children in a new automobile recently purchased by Lieutenant Mayer, which was in the possession of appellant and which was described by her as a "joint car" registered in his name. Appellant was to pay all the driving expenses, appellee was to pay simply her own personal expenses and was to pay for her own food and lodging. No arrangement was made whereby appellee was to assist on the trip in the driving of the car; on the contrary, appellant expected to drive all the way unless she became tired or ill and it was necessary for them to continue on the trip without delay. Appellant did expect appellee to volunteer to do part of the driving and appellant expected, if the occasion did present itself, to let appellee drive the automobile at some time on the trip.

On the morning of May 2, 1939, appellant, her two children, Catherine (age 10) and Donny (age 3), and appellee all started upon their journey in appellant's car. Appellant drove all the morning, with appellee on the front seat and with the children alternating between the front and rear seats. (There was a steamer trunk between the front and rear seats flush with

the top of the front seat.) They stopped for lunch at a filling station a few miles beyond Richmond, Virginia. Then, when the meal was over, appellee is quoted as having said to the appellant: "Oh, please let me drive your new car; I can't wait to drive it." Appellant consented and they then proceeded with the appellee driving on the left side of the front seat; the little girl, Catherine, in the middle; and appellant, with little Donny on her lap, on the right side of the front seat.

After they had driven for about half an hour, Donny became restless and his mother (appellant) told him to go to the rear seat for his nap. He climbed, with her assistance, over her left shoulder between her and little Catherine, and scrambled over the steamer trunk to the rear seat. Appellant testified that while she was still half turned to her left, helping to put some covering over Donny, she heard appellee exclaim: "Oh, Cathey." Appellant turned and saw the automobile proceeding all or partly on the left shoulder of the road. Appellee swerved the car to the right, then swerved it again to the left, and the car went to the left, off the road, and collided with a pine tree. Appellee was rendered immediately unconscious and has not since recovered consciousness. The accident occurred a short distance west of Powhatan Courthouse, Virginia.

The automobile was new and in good condition. Appellant testified that the car was not going over 40 miles per hour just before, and at the time of, the accident. Although it had rained on the morning of the accident, appellant testified that at the time of the accident, though the shoulder of the road was muddy, the road itself was dry. Neither appellant nor her daughter could offer any reason that would practically explain just why appellee lost control of the car. They saw nothing done by appellee which was in any manner inconsistent with the careful operation of the automobile.

On the other hand, both the father and the mother of appellee testified to an alleged admission against interest made by appellant, in a room in the hospital, at about nine o'clock on the night of the accident. As appellee's mother testified (Appellant's Supplement, p. 9): "Mrs. Mayer came in the room and I said, 'Mrs. Mayer, tell me about it'. She said, 'No, not now'. I said, 'I want to know'. She said, 'Gladys was driving'. I said, 'She was.' She said, 'We were driving along and I. was getting Donny to sleep and I turned to put him in the back seat and his feet got tangled in the steering wheel or her arm and the next thing was the crash', and that was all that she said."

Similar evidence of this alleged admission was introduced through the testimony of Taylor Irving, the laundry-truck driver who brought appellee and appellant to the Johnston-Willis Hospital in Richmond. He testified (Appellant's Supplement, p. 21): " * * * she [appellant] said that one of her children had been fretting and was being moved either from the front to the back or from the back to the front—I can't remember which—one of the two."

Appellant denied making any statement to appellee's parents or to anyone else to the effect that she touched appellee or that her child got tangled up in any way with either the steering wheel or the arm of the appellee.

This action was originally brought in the Circuit Court of Powhatan County, Virginia, but was removed to the United States District Court. In her notice of motion for judgment in the state court, appellee charged appellant with negligence in that appellant recklessly, carelessly, negligently and violently jolted into and against appellee, thereby causing her to lose control of the automobile, resulting in the accident and in appellant's permanent and total unconsciousness. At the conclusion of the evidence for appellee, and again at the conclusion of all the evidence, appellant moved the District Court to direct a verdict for appellant upon the ground that appellee was as a matter of law a guest in the automobile at the time she was driving, and that there was no evidence of any gross negligence (as required by the Virginia Guest Statute), or any wilful or wanton disregard by appellant for the safety of appellee. These motions were overruled. The District Judge made no charge to the jury in reference to the Virginia Guest doctrine and statute, but submitted the case to them on the theory of ordinary negligence. The jury brought in a verdict in favor of appellee and against appellant, while damages were assessed at $3,500. The District Judge then overruled appellant's motion to set aside the verdict of the jury and to enter judgment for appellant in accordance with her motion for a directed verdict. He also overruled the mo-

tion of appellee to set aside the verdict of the jury as to the amount of damages only, to enter judgment on the verdict as to appellant's liability, and to empanel a new jury for the single purpose of assessing the damages.

This appeal involves a consideration of the Virginia Guest Statute: "No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported, shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Virginia Code Ann. (Michies' Supp.1938) § 2154(232). The statute represents a legislative codification of the gross negligence rule as established in the State of Virginia by the case of Boggs v. Plybon, 1931, 157 Va. 30, 160 S.E. 77. This case specifically adopted the Massachusetts, or minority, rule as promulgated in the leading case of Masseletti v. Fitzroy, 1917, 228 Mass. 487, 118 N.E. 168, L.R.A.1918C, 264, Ann.Cas.1918B, 1088, that gross negligence must be proved to make out liability in a gratuitous undertaking.

■ The gross negligence doctrine is based upon the assumption that at common law there were varying degrees of negligence, or at least different degrees of care owed, and that one who undertakes to perform a duty gratuitously should be subject to a lesser measure of obligation than one who enters upon such an undertaking for pay. See Masseletti v. Fitzroy, supra, 118 N.E. at pages 174 and 177. The doctrine has been rejected in most states and has been subjected to severe criticism. See note in Virginia Section (1937) 24 Va.L.Rev. 88, 90; also, White, The Liability of an Automobile Driver to a Non-Paying Guest (1934) 20 Va.L.Rev. 327. It was said by Baron Rolfe (later Lord Cranworth) in Wilson v. Britt, 11 M. & W. 113, 115-116, that gross negligence is practically the same thing as negligence with only the addition of a "vituperative epithet." In all events, the principles inherent in the doc-

trine are difficult in their practical application to instant cases; it has been very largely through statutory enactment that the doctrine has survived.

This court has been called on before to consider the Virginia rule. See Hewlett v. Schadel, 4 Cir., 1934, 68 F.2d 502, 91 A.L.R. 143. And under the authority of Swift v. Tyson, 1842, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865, we felt justified in rejecting the minority rule. Judge Parker, speaking for this Court, observed that the attempt to divide negligence into degrees had been expressly disapproved by the Supreme Court in the case of Steamboat New World v. King, 1853, 16 How. 469, 57 U.S. 469, 474, 14 L.Ed. 1019. Judge Parker stated (68 F.2d at page 507, 91 A. L.R. 143): "The fact that the guest pays nothing for riding with the owner furnishes no reason why the negligence of the latter should be excused."

■ Since the decision in the Hewlett case, supra, the State of Virginia has seen fit to place the gross negligence rule in statutory form. Also, by the decision of the Supreme Court in Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are now obliged to follow the decisions of the state courts, irrespective of our views as to the correctness of, or the policy manifested in, these decisions. E. g., Carroll v. Miller, Va.1940, 9 S.E.2d 322, 324; Thornhill v. Thornhill, 1939, 172 Va. 553, 2 S.E.2d 318; Thomas v. Snow, 1934, 162 Va. 654, 174 S.E. 837, 838; Young v. Dyer, 1933, 161 Va. 434, 170 S.E. 737.

■ In order to determine the legal relationship existing between appellant and appellee at the time of the accident, we must first consider the relationship existing between them at the very outset of the journey. We think that the Virginia cases clearly establish that no joint enterprise was undertaken by the parties. Lacking here is that mutuality of control and direction over the operation of the car which the Virginia Supreme Court of Appeals has deemed so vital to the establishment of a joint enterprise. Brown v. Parker, 1937, 167 Va. 286, 189 S.E. 339, 341; Johnston v. Kincheloe, 1935, 164 Va. 370, 180 S.E. 540, 541; Miles v. Rose, 1934, 162 Va. 572, 175 S.E. 230, 235. Obviously, appellant kept complete control in her own hands. She was to pay all driving expenses; she was to do all the driving save that she hoped and expected that

appellee might drive some in case of emergency or in case the appellant · became tired. Although appellant undoubtedly welcomed the opportunity of having a companion on this long trip, the essential elements of a joint enterprise were not present. The mere presence of a mutual or joint interest does not furnish the basis for a joint enterprise. See Miles v. Rose, supra. Each, appellant and appellee, was making the trip for a separate and distinctive purpose, peculiar to herself.

■ Again, there is no evidence that appellee embarked on the trip in the role of a "passenger" as this role is distinguished from that of a "guest". The Restatement of Torts (American Law Institute) § 490 provides a clear definition of a "guest" under the conditions here presented: "The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return, except such slight benefits as it is customary to extend as a part of the ordinary courtesies of the road." Under the arrangement existing between appellant and appellee, appellant was to secure no financial return for the transportation. Appellee's only expenses were to be for her own food and lodging—there was to be nothing in the way of payment by appellee to appellant for the trip. The mere expectation or hope that appellant entertained about the possibility that appellee might sometimes drive, would seem to come under the category of "ordinary courtesies o fthe road".

■ It seems clear that appellee embarked on her journey with appellant as a "guest" within the meaning of the Virginia Guest Statute, supra, and within the holdings of the Virginia decisions on the doctrine of gross negligence. This was conceded by counsel for appellee. We further think that this relationship had not been changed at the time of the accident by the mere fact that appellee was then driving the car. While it was quite possible for the appellant to have divested herself of the protection of the Guest Statute by agreement or by acts, changing her undertaking to a transportation for payment, either in money or service, yet we find no such agreement, no such acts in the instant case. Our conclusion is strengthened by the fact that appellee was driving at her own request. The

granting of appellee's request by appellant was in the nature of a favor to the appellee, rather than in the nature of any definite agreement or any very significant act. Appellee was driving for her own amusement, to gratify her own curiosity, rather than for the purpose of aiding appellant. Both the time she might drive and the distance were altogether indefinite. Even if appellant had made the request, the mere fact that appellee was driving, we think is not in' itself of conclusive legal significance. This change of position by appellee from mere occupant to driver is, at best, only slight evidence of a change of relationship as between the parties themselves.

Some discussion of the Virginia decisions in this field would seem in order. We believe they sustain the view we have adopted.

In Brown v. Branch, Va.1940, 9 S.E.2d 285, the plaintiff brought an action against the defendant for personal injuries sustained while they were returning home from a picnic in defendant's car. The theory of plaintiff was that he was a "pay passenger". The plaintiff maintained that he had paid for his transportation by making purchases at the picnic of the Sunday School over which the defendant was Superintendent. He further contended that he had paid for his transportation by assisting in gathering passengers for the picnic, by helping to unload the truck at the picnic grounds, and by holding the empty ice-cream freezer at the defendant's request on the return trip. In holding that as a matter of law the plaintiff was a guest, the court stated that there was " * * * no evidence whatsoever to sustain the contention that Branch [defendant] derived any financial benefit from the picnic or from the sale of any of the food there." 9 S.E.2d at page 286. And in considering whether the services rendered by the plaintiff took him out of the category of "guest", the court added (9 S.E.2d at pages 286, 287): "These were but trivial courtesies such as a host might well expect of his guest on such an occasion. There is not the slightest evidence that they were intended to convert the relation of a gratuitous guest into that of a passenger for a consideration."

The holding was based on the absence of any pecuniary benefit accruing to the defendant and the absence of any contractual relation between the parties.

Where such contractual relation has existed, i. e., in cases involving employer and employee, the Virginia court has applied the rule of ordinary, not gross, negligence. See Garrett v. Hammack, 1934, 162 Va. 42, 173 S.E. 535; White v. Gregory, 1933, 161 Va. 414, 170 S.E. 739. No case has been brought to our attention, however, though we have scanned the authorities carefully, which holds that the mere benefit resulting from companionship, or the advantage resulting from a promise to assist in the driving, was of a legal value sufficient in itself to transfer a gratuitous undertaking into an undertaking for payment. Cf. Gale v. Wilber, 1934, 163 Va. 211, 175 S.E. 739; Jacobson v. Stone, 1931, 277 Mass. 323, 178 N.E. 636; Flynn v. Lewis, 1919, 231 Mass. 550, 121 N.E. 493, 2 A.L.R. 896.

The case of Clark v. Parker, 1933, 161 Va. 480, 171 S.E. 600, seems to indicate that the Virginia Supreme Court of Appeals holds that a person may still be a "guest", even though he be driving the owner's car. In that case, the defendant-owner had offered to drive the plaintiff-guest from Newport News, Virginia, to the plaintiff's home in North Carolina. The undertaking was a gratuitous one. During the trip, the defendant became sleepy, asked the plaintiff to drive and plaintiff complied with the request. A short while thereafter, the plaintiff crashed into another car and was injured. He claimed that his injury was due to defective brakes and evidently sued the defendant on the Virginia theory of gross negligence, even though the accident occurred in North Carolina; for the court stated (171 S.E. at page 601):

"This case seems to have been tried upon the theory that the doctrine of Boggs v. Plybon, 157 Va. 30, 160 S.E. 77, applies. * * *

"But this was a North Carolina accident, and in that state there are no degrees of negligence. * * * It follows that ordinary negligence will support a recovery."

Throughout the opinion, the court seems to regard the plaintiff as a guest, and we believe that the only reason why the gross negligence doctrine was not applied to the "guest" (who was driving at the time of the accident) was that the accident occurred in a state (North Carolina) which did not recognize this doctrine. It is significant, we think, that the court, in Clark v. Parker, supra, while discussing the owner's liability for defective brakes, quoted a passage from 1 Blashfield on Automobiles, p. 967, dealing with the owner's liability to an "invited guest".

Cases from other states appear also to lend support to our views. As the court stated, in considering the application of the gross-negligence doctrine, in Albrecht v. Safeway Stores, Inc., 1938, 159 Or. 331, 80 P.2d 62, 66, 67: "Under ordinary circumstances the status of a guest would not be changed merely by reason of the fact that such person, at the request of the operator of a motor vehicle, did part of the driving. Such benefit would be too trivial or inconsequential to change the relationship of the parties."

Ruel v. Langelier, 1938, 299 Mass. 240, 12 N.E.2d 735, is quite in line with what we have decided. In that case, the defendant offered to drive the plaintiff home. To help start the car in the snow, the plaintiff stepped out of the car in order to push from the rear. The defendant put the car into reverse and the car hit the plaintiff. The court held that the plaintiff was still a guest, even though she was outside of the car at the time of her injury. Obviously, the original gratuitous undertaking of the owner was the basis for the application of the "guest" status. So long as the nature of this undertaking has not changed, and so long as the undertaking continues, the host-guest relationship will be respected, regardless of the actual position of the parties in the automobile at the time of the accident. Cf. Head v. Morton, 1939, 302 Mass. 273, 19 N.E.2d 22; Gledhill v. Connecticut Co., 1936, 121 Conn. 102, 183 A. 379. See also Ethier v. Audette, Mass., 29 N.E.2d 707, Oct. 3, 1940, 9 U.S.L.Week 2282.

Counsel for appellee has strongly urged that appellee, by driving the car, thereby became, and was acting as, the agent or the servant of appellant and that appellee was, therefore, entitled to a degree of care greater than that fixed by the Guest Statute. We recognize that as far as third persons are concerned, the agency relationship might very well exist. As between the parties themselves, however, we repeat that the host-guest relationship was not altered by the mere change of position in the automobile, when appellee, who had been a mere gratuitous occupant of the car, began to drive. Cf. Strong

v. Ernst, 1932, 169 Wash. 617, 14 P.2d 697, 699. In the common and usual meaning of the word "guest", a person is still considered a guest, as far as his host is concerned, even though he may be driving his host's car.

Up to this point, we have considered the problem involved in the instant case solely on the basis of the principles and theory underlying the gross negligence doctrine. We believe this analysis sustains our opinion. We believe, also, that the exact language and the terminology of the Virginia Guest Statute, supra, is in accord with our view.

■ The statute provides in broad terms that a person "transported by the owner or operator of any motor vehicle as a guest without payment * * *" must show that the owner or operator was guilty of at least gross negligence, in order that such person may recover damages from the owner or operator for injuries sustained by such person during the operation of the vehicle. Funk & Wagnalls New Standard Dictionary defines the verb "transport" as meaning, "To carry or convey from one place to another." It is our opinion that a person who is being driven in an automobile through his own operation, but in the presence of the owner, is as truly being "transported by the owner" as is a person who is being driven through the actual operation of the owner himself. After all, it is the motor vehicle that does the transporting, regardless of the particular person who is driving. Hence, we believe that under the terminology of the Statute, a person invited for a ride as a "guest", as that term is hereinbefore defined, comes within the ambit of the statute, whether he himself operates the car in the presence of the owner or whether the owner is the operator.

The appellee would limit the application of the statute to those situations where the injury occurred in a vehicle *operated* by the "owner or operator". We think such an interpretation is violative of the express words of the statute. In our opinion, the statute must apply not only where the injured party was in a vehicle *operated* by the "owner or operator", but also where he was being "*transported* by the owner or operator", notwithstanding the fact that the injured party was doing the operating.

■ We think it is clear in this instant case that, even if the testimony be taken in the light most favorable to the plaintiff-appellee, the act of defendant-appellant, in moving the little boy from the front seat to the back seat of the car, cannot reasonably be said to amount to gross negligence under the Virginia Guest Statute. Indeed, *no substantial evidence is present in the record to support a finding of gross negligence.*

Accordingly, the judgment of the District Court is reversed and the case is remanded to that court with directions to enter judgment in favor of the defendant-appellant. This disposes of the cross-appeal.

Reversed.