Leonard HELMS, Plaintiff,

v.

Tianada LEONARD, Defendant.

Civ. A. No. 593.

United States District Court
W. D. Virginia,
Abingdon Division.

Jan. 23, 1959.

Dick B. Rouse and Widener & Widener, Bristol, Va., for plaintiff.

Donald Stant, Bristol, Va., for defendant.

THOMPSON, Chief Judge.

This is an action by Leonard Helms, a citizen of Bristol, Virginia, against Tianada Leonard, a citizen of Bristol, Tennessee, for damages in the amount of $75,000 for injuries he suffered in an automobile accident.

By agreement of counsel, this action was heard and tried by the Court without a jury. At the conclusion of the evidence the defendant moved for a dismissal under Rule 41 F.R.Civ.P., 28 U.S. C.A. and assigned grounds therefor as fully appear in the transcript of the record, which motion the Court took under advisement. Now having maturely considered said motion, for the reasons hereinafter set forth, the Court is of the opinion to deny the same and enter judgment for the plaintiff.

### Issues to be Decided

At the time of the accident, the plaintiff, Helms, was riding in his own car which was being driven by Miss Leonard, the defendant. Miss Leonard was Helms' girl friend; she requested that he let her drive his Cadillac, which he did.

## Issues

1. Did the plaintiff who was the owner of the car in which he was riding and which was being driven by the defendant at her request and with plaintiff's consent, become the guest of the defendant driver?

2. If the plaintiff was a guest of the defendant, was the defendant guilty of such gross negligence as is required before a guest can recover from a host under the Virginia Guest Statute?

3. If the defendant was not guilty of gross negligence, was she guilty of such ordinary negligence as would entitle the plaintiff to recover?

4. Was the plaintiff guilty of negligence which proximately contributed to the accident and his resulting injuries?

## Findings of Fact

Both plaintiff and defendant were 37 years of age and unmarried. The plaintiff had been employed for approximately seven years as a mechanic for Associated Transport in Bristol, earning, at the time of the accident, $97 per week. The defendant was employed in a beauty shop in Bristol. They had known each other for a considerable time, and had been dating with some frequency. On these social occasions, it was their custom to drive about the city of Bristol and environs and talk, Miss Leonard normally doing most of the driving, as she enjoyed driving Helms' '49 Cadillac car.

The plaintiff had made an engagement with the defendant for 5 p. m. on March 30, 1957, the afternoon before the accident. Accordingly, that afternoon, he drove to her home on Ester Street in Bristol, Tennessee. When he arrived to pick up Miss Leonard, she suggested, as she often had done in the past, that he allow her to drive his Cadillac. Helms acquiesced, and she took the wheel and began to drive around town, as was their wont on such occasions. Her driving, on this occasion, as on all like occasions in the past, was careful, at least until the time of the accident.

Helms had confidence in her ability to operate the Cadillac in a safe manner, since she had driven it many times in the past without incident. Turning over the complete control and operation of the car to Miss Leonard created no hazard, and Helms' inattention to her driving was not a factor which contributed to the accident.

They decided to go to a dance at the V. F. W. Post on West State Street, and drove first to Helms' rooming house where they invited his landlady, Mrs. Carty, to accompany them to the dance. Helms and Miss Leonard had been taking dancing lessons together, and Mrs. Carty, who did not herself dance, liked to watch them. The plaintiff and defendant, accompanied by Mrs. Carty, set out for the dance, Miss Leonard still driving. All the driving on the night of this accident was done by Miss Leonard, at her request and with the consent of the plaintiff. They arrived at the dance about 9:00 p. m.

The three attended the dance, where Helms drank two bottles of beer, and bought six more in a carrier to take out. Neither Miss Leonard nor Mrs. Carty had anything to drink at the dance. At 12:00 or 1:00 a. m. when the dance was over, they left and took Mrs. Carty to her home on Oak Street. Then, Miss Leonard still driving, the plaintiff and defendant set out for a drive-in-restaurant nearby. When they reached it, it was closed, and they continued to ride around and talk. (It had been agreed between Helms and Miss Leonard that she would drop him off at his home, and then take his car to her residence, as she had frequently done in the past, returning it to him the following day.)

Sometime after 2:30 a. m., March 31, 1957, they started back toward the plaintiff's residence on Oak Street, the plaintiff drowsing in the seat beside Miss Leonard, who was driving. The defendant drove the car in a westerly direction along Sycamore Street until she reached the corner of Sycamore and Solar Street, and turned left on Solar Street, intending to drive down Solar to Cumberland Street, a distance of 388 feet, and then turn right on Cumberland, go around

the block, and arrive on Oak Street on the side of the plaintiff's residence heading toward her own residence. Solar and Cumberland Street form a "T" with Solar ending where Cumberland crosses it. The view from Solar Street to Cumberland, other than the segment of Cumberland Street immediately in front of Solar, is obscured by a stone wall, as is the view from Cumberland back onto Solar. Miss Leonard was familiar with the street intersection and knew that there was a dead end and a stop sign on Solar to stop traffic entering Cumberland. She had driven the plaintiff home by this route several times prior to this occasion. As she came down Solar Street toward Cumberland, Miss Leonard, in obedience to the stop sign at the intersection, intended to stop and attempted to do so. However, her foot either glanced off the brake and struck the accelerator or she stepped on the accelerator by mistake; at all events, she failed to stop at the intersection, but instead accelerated across Cumberland Street, and smashed head-on into the stone wall immediately across from the debouchment of Solar into Cumberland Street. There were no tire marks on Solar Street. She did not stop at Cumberland Street, she lost control of the car, failed to make the proper turn, and drove the car into the block wall.

Just as the Cadillac driven by the defendant sped across Cumberland Street, Officer Charles Cross of the Bristol, Virginia Police Department, and Carl Honaker of the Bristol, Virginia Life Saving Crew were approaching the intersection of Solar and Cumberland Streets, on Cumberland Street, headed east. They saw the lights of the Cadillac shining from Solar Street into Cumberland, but could not see the Cadillac until it actually came out of Solar onto Cumberland Street, due to the fact that the view from Cumberland into Solar is obscured by a stone wall. They could only see the Cadillac during the brief instant it took it to traverse the 40 foot width of Cumberland Street, and observing it only from the side, they esti-

mated that the Cadillac was going at a high rate of speed of approximately 55 miles per hour, and that no apparent attempt to stop it was being made by the driver.

The speedometer needle on the Cadillac was pointing to 55 miles after the car smashed into the wall, which fact could well have been the result of the needle being jarred to this point by the severe impact of the car with the wall, and this fact alone does not establish that the car was being driven at 55 miles per hour before the impact. In view of the fact that the officers only saw the Cadillac for a distance of 40 feet as it crossed in front of them in the nighttime, it is improbable that they could accurately have fixed the speed of the car; and they may have been influenced in their estimate of the speed by the position of the speedometer needle. There was no evidence that Miss Leonard had driven the car at an excessive rate of speed until she left Sycamore Street and was traveling Solar Street to Cumberland, the point of the accident.

The officer removed the parties from the wreckage; Miss Leonard had not been drinking, but there was an odor of liquor on Helms. There was a carton with six unopened bottles of beer in the wrecked car, and also one empty vodka bottle and one full one.

The plaintiff was taken immediately to the hospital, where he was given emergency treatment. The injuries from which the plaintiff was suffering at this time were a badly cut face, chipped teeth, possible fractured jaw, a crushed chest, broken ribs, a broken femur, a ruptured liver, bile in the peritoneum, and shock. The ruptured liver resulted in bowel peritonitis and jaundice. The broken femur resulted in a permanent two-inch shortening on the left leg, causing a slight limp. The shock of these massive injuries has resulted in a general neurasthenic condition in the plaintiff.

The plaintiff has made a remarkable recovery, and although some of his injuries are of a permanent character, it

is not shown as a fact that his future earning capacity will be diminished by any known permanent injuries. The plaintiff was hospitalized for 192 days; he returned to work on January 27, 1958 at his old job and at the same wage. His total loss of wages was approximately $4,000, and his hospital, medical and nursing expenses also amounted to approximately $4,000.

The Court specifically finds the facts in this case to be as above stated.

### Conclusions of Law

1. *Did the plaintiff who was the owner of the car in which he was riding and which was being driven by the defendant at her request and with plaintiff's consent, become the guest of the defendant driver?*

The resolution of this question is dependent upon the Virginia Guest Statute and the cases construing the same. The Virginia Guest Statute is as follows:

"No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Va. Code Ann., Sec. 8-646.1 (1950).

For the purposes of this decision, the controlling case, decided by the Fourth Circuit, is Mayer v. Puryear, 1940, 115 F.2d 675. There, in construing this statute, the Court held at page 678:

"The statute represents a legislative codification of the gross negligence rule as established in the State of Virginia by the case of Boggs v. Plybon, 1931, 157 Va. 30,

160 S.E. 77. This case specifically adopted the Massachusetts, or minority, rule as promulgated in the leading case of Masseletti v. Fitzroy, 1917, 228 Mass. 487, 118 N.E. 168, L.R.A.1918C, 264, Ann.Cas.1918B, 1088, that gross negligence must be proved to make out liability in a gratuitous undertaking."

In the light of the approach to cases of this nature outlined in Mayer, supra, it is first necessary to consider the nature of the relationship between the plaintiff and defendant at the outset of this social engagement in order to determine the guest-host relationship at the time of the accident. Miss Leonard was invited by Helms to go out with him on the evening of the accident. She expressed a wish to drive his car, and he, to gratify her whim, acquiesced. Miss Leonard was Helms' invited guest at the inception of this engagement; he had requested her company and he provided the means of transportation and the entertainment they enjoyed at the V. F. W. club where he was a member. Nothing happened throughout the course of the evening to change the relationship of the parties from what it was at its inception.

In Mayer, the court states 115 F.2d at page 680 that

" * * * Obviously, the original gratuitous undertaking of the owner was the basis for the application of the 'guest' status. So long as the nature of this undertaking has not changed, and so long as the undertaking continues, the host-guest relationship will be respected, *regardless of the actual position of the parties in the automobile at the time of the accident*."

citing cases, and further that

" * * * As between the parties themselves, however, we repeat that *the host-guest relationship was not altered by the mere change of position in the automobile, when appellee, who had been a mere gratuitous occupant of the car, began to drive*." (Emphasis added.)

also citing cases, and this holding is consonant with that reached in cases from other jurisdictions interpreting similar statutes. See Gledhill v. Connecticut Co., 1936, 121 Conn. 102, 183 A. 379; Anderson v. Burkardt, 1937, 275 N.Y. 281, 9 N.E.2d 929.

A more recent case interpreting the Virginia statute is Lorch v. Eglin, 1952, 369 Pa. 314, 85 A.2d 841, at page 843, where the court held that

"* * * It may be added that not only *would it be contrary to any ordinary meaning of the term guest to hold that the owner of a car was the 'guest'* of his friend who was driving it but *it cannot be said that such an owner is being transported 'without payment for said transportation'*, since he is furnishing the use of his automobile and thereby contributing to the cost of the transportation the equivalent of the rental value of his car. Accordingly it is clear that Lorch did not come within the terms of the statute which would have made it necessary for him to prove more than ordinary negligence on the part of Eglin in order to establish his cause of action." (Emphasis added.)

and this holding is in concord with Mayer where the court said, 115 F.2d at page 681,

"* * * Hence, we believe that under the terminology of the Statute, a person invited for a ride as a 'guest', as that term is hereinbefore defined, comes within the ambit of the statute, whether he himself operates the car in the presence of the owner or whether the owner is the operator."

■ Counsel for the defendant have vigorously urged on brief that this court should follow the holding of Phelps v. Benson, 1958, 252 Minn. 457, 90 N.W. 2d 533. That well reasoned decision is most persuasive for the position that, since the possibilities of collusion are great in such situations as that before the court, the mere ownership of a vehicle should not prevent the owner from being a guest therein; also, the argument of counsel that guest statutes were enacted to prevent the mischief of collusive suits and to legislatively abrogate the 'thumbrider' philosophy of recovery is recognized and should not be considered lightly. However, under the facts and circumstances here presented, this court is bound by the precedents cited above, especially the Mayer case, and therefore holds that the fact that Miss Leonard was driving Helms' automobile at the time of the accident did not change her status as guest nor his as host, and that the Virginia Guest Statute is therefore inapplicable in this case.

■ There was no joint enterprise, for there was no mutuality of control over the operation of the car, it being understood between the parties that Miss Leonard would drive only to satisfy her fancy and not to achieve any mutual purpose. All the expenses of operation of the automobile were of course paid by Helms.

"* * * The mere presence of a mutual or joint interest does not furnish the basis for a joint enterprise." Mayer v. Puryear, supra, 115 F.2d at page 679.

The Court having held that the guest statute is here inapplicable, the plaintiff need only show ordinary negligence on the part of the defendant to recover in this action.

2. *If the plaintiff was a guest of the defendant, was the defendant guilty of such gross negligence as is required before a guest can recover from a host under the Virginia Guest Statute?*

Having held that the plaintiff was not the guest of the defendant, it is not necessary to my decision to determine whether or not gross negligence has been shown; however, much of the briefs of counsel was devoted to the question of gross negligence, and the Court has carefully considered the evidence in the light of the briefs, and is of the opinion that

it is appropriate to make a finding on the question of gross negligence.

No specific rule can be laid down as to what constitutes gross negligence; each case must be decided on its particular facts or circumstances, but it can be said with certainty that gross negligence is substantially and appreciably higher in magnitude than ordinary negligence and that it is materially more want of care than simple inadvertence.

The evidence in this case upon which the Court has made its findings of fact as hereinbefore set out fails to show that Miss Leonard operated the car she was driving in a manner that would constitute an utter disregard of prudence, complete neglect of the safety of the guest, or heedless and reckless disregard of the rights of others. As was said in Lloyd v. Green, 1953, 194 Va. 948, 76 S.E.2d 190, 194;

> "The usual indicia of gross negligence such as purposeful recklessness, deliberate inattention to known dangers, conscious and intended violation or rash disregard of traffic laws, or like purposeful misconduct, are wholly lacking on the part of defendant in the circumstances attending this accident."

The Court therefore finds that under the evidence of this case the defendant was not guilty of gross negligence within the meaning of the Virginia Guest Statute, Sec. 8–646.1, Code of Va., Ann. It would follow that if the Guest Statute were applicable, the plaintiff would not be entitled to recover, as no gross negligence has been shown.

3. *If the defendant was not guilty of gross negligence, was she guilty of such ordinary negligence as would entitle the plaintiff to recover?*

There was nothing unusual about the defendant's driving during the evening until she reached the scene of the accident. She had turned off Sycamore Street on to Solar Street, and she then had to travel only 388 feet to the intersection with Cumberland, where Solar dead ends. She knew there was a stop sign at this intersection and was familiar with all the other conditions there as she had driven this route many times. She knew she was required to stop before entering Cumberland; to do so she should have applied her brakes and slowed down before reaching the stop sign so she could have had her car under control and made the turn in safety. When she intended to apply the brakes and made an effort to do so, her foot either slipped off the brake pedal, or she stepped on the accelerator and pushed it, then "panicked," and drove the car into the block wall. She did not stop at the intersection; if she applied her brakes, there were no tire marks; she did not keep her car under control; and she did not make the proper turn.

Under all of the facts and circumstances the Court is of the opinion, and so finds that the defendant was guilty of ordinary negligence which was the sole proximate cause of the accident and the plaintiff's injuries.

4. Was the plaintiff guilty of *negligence which proximately contributed to the accident and his resulting injuries?*

There was nothing to forewarn the plaintiff that the defendant would be inattentive or careless about her duties as a driver. The fact that he was asleep bore no causal relation to the accident. There is not a scintilla of evidence in this case that Helms knew of any existing hazard, that he had any opportunity to avoid the actual hazard, or that he made any voluntary choice to incur the risk of such hazard. When he went to sleep, he had every reason to believe that his car was under the control of a person whom he believed to be a competent driver, fully familiar with the car's operation. This Court will not hold such conduct as this under such circumstances as these to be contributory negligence. See Newell v. Riggins, 1955, 197 Va. 490, 90 S.E.2d 150.

### Conclusion

An order will be entered denying defendant's motion to dismiss this action.

The Court is of the opinion that the defendant was guilty of ordinary negligence which was the sole proximate cause of the plaintiff's injuries, and that plaintiff sustained damages in the sum of $13,000. The Court so finds, and a judgment will be entered for the plaintiff against the defendant for the sum of $13,000 and costs.